Michael E. McCarthy (SBN 301010)
mccarthyme@gtlaw.com
Layal Bishara (SBN 329154)
bisharal@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: (310) 586-7700
Fax: (310) 586-7800
Attorneys for Defendants
JPMORGAN CHASE & CO. and
RICK SMITH

[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>J.P. MORGAN CHASE & CO., a Delaware corporation; RICK SMITH, an individual; NEOLOGY INC., a Delaware corporation; FRANCISCO MARTINEZ DE VELASCO, an individual; AVERY DENNISON CORP., a Delaware Corporation; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.: 3:24-cv-01334-JES-MSB<br><br>(Related to Case No. 3:23-cv-02106)<br><br>Assigned to Hon. James E. Simmons, Jr.<br><br>**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>[Special briefing schedule ordered (Civ. L.R. 7.1.e.8)]<br><br>Hearing Date: October 30, 2024<br>Hearing Time: 11:00 a.m.<br>Courtroom: 4B |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   RELEVANT BACKGROUND .......................................................... 3

    A.    Plaintiff's Claims Arise Out of and Relate to Investment
        Contracts, Yet He Avoids Naming the Actual Signatories to the
        Contracts as Defendants in an Effort to Evade Arbitration. ........... 3

    B.    The Procedural History Shows Jurisdiction Exists. ....................... 5

III.  THE MOTION TO REMAND SHOULD BE DENIED .......................... 6

    A.    There Is a Strong Preference for a Federal Forum in Convention
        Cases. ............................................................................... 6

    B.    Defendants Did Not Need to Consent to Removal. ....................... 7

    C.    All Defendants Consented to Removal, and JPMC Did Not
        "Waive" its Ability to Consent ................................................ 9

    D.    Plaintiff Relies on Distinguishable Authorities. ......................... 11

    E.    The Court Has Subject Matter Jurisdiction under the New York
        Convention. ....................................................................... 13

        1.    Plaintiff's claims "relate to" the Mullis/OEP Agreements. ........ 14

        2.    The Mullis/OEP Agreements fall under the Convention. ......... 16

        3.    Plaintiff cannot evade arbitration by suing nonsignatories. ...... 17

IV.   CONCLUSION ................................................................................ 20

24-cv-01334

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acab v. Chenrosa LLC,*
  2024 WL 1283819 (S.D. Cal. Mar. 26, 2024) ........................................................ *passim*

*Advanced Mktg., Int'l, Inc. v. Ferguson,*
  2006 WL 1679417 (M.D. Fla. June 14, 2006) ..................................................... 11

*Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.,*
  2023 WL 8845213 (C.D. Cal. Dec. 19, 2023) ................................ 3, 15, 18, 19

*Amerisource Funding, Inc. v. SKIBA,*
  2009 WL 6472946 (S.D. Tex. Nov. 17, 2009) ..................................................... 11

*Assad v. Josefsson,*
  2018 WL 3046958 (C.D. Cal. June 19, 2018) ........................................... 2, 6, 9

*Balen v. Holland Am. Line, Inc.,*
  583 F.3d 647 (9th Cir. 2009) ........................................................................... 16

*Beiser v. Weyler,*
  284 F.3d 665 (5th Cir. 2002) ................................................................... 3, 6, 14

*Bradshaw Constr. Corp. v. Underwriters at Lloyd's, London,*
  2016 WL 8739603 (S.D. Fla. Jan. 8, 2016) ..................................................... 12

*Cattleman's Choice Loomix, LLC v. Heim,*
  2011 WL 1884720 (D. Colo. May 18, 2011) ..................................................... 11

*Cavanaugh v. Cty. of San Diego,*
  2019 WL 3202238 (S.D. Cal. July 16, 2019) ............................................. 10, 11

*China N. Indus. Tianjin Corp. v. Grand Field Co.,*
  197 F. App'x 543 (9th Cir. 2006) ....................................................................... 9

*Coffey v. Ripple Labs Inc.,*
  333 F. Supp. 3d 952 (N.D. Cal. 2018) ............................................................... 7

*Cruz v. Nat'l Steel & Shipbuilding Co.,*
  910 F.3d 1263 (9th Cir. 2018) ......................................................................... 13

24-cv-01334

*Day v. Orrick, Herrington & Sutcliffe, LLP*,
    42 F.4th 1131 (9th Cir. 2022) ...................................................................... 6

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ...................................................................... 11

*Emps. Ins. of Wausau v. Certain Underwriters at Lloyd's, London*,
    787 F. Supp. 165 (W.D. Wis. 1992) .......................................................... 12

*Faulk v. Alcoa Inc.*,
    2017 WL 6821869 (W.D. La. Jan. 31, 2017) .............................................. 8

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,
    2020 WL 5106851 (N.D. Cal. Aug. 31, 2020) ........................................... 16

*Fortenbaugh v. GeoStar Corp.*,
    2008 WL 4857931 (N.D. Cal. Nov. 10, 2008) ........................................... 11

*Freaner v. Valle*,
    2011 WL 5596919 (S.D. Cal. Nov. 17, 2011) ..................................... 15, 19

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
    140 S. Ct. 1637 (2020) ............................................................................... 17

*Grand View PV Solar Two, LLC v. Helix Elec., Inc./Helix Elec. of Nev., L.L.C., J.V.*,
    847 F.3d 255 (5th Cir. 2017) ..................................................................... 11

*Gulf Coast Pharm. Plus, LLC v. RFT Consulting, Inc.*,
    2024 WL 3862045 (S.D. Miss. Aug. 19, 2024) .......................................... 11

*Helford v. Cheyenne Petroleum Co.*,
    2015 WL 5771835 (N.D. Tex. Aug. 6, 2015) ............................................. 11

*Hopkins & Carley, ALC v. Thomson Elite*,
    2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ............................................. 16

*Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*,
    631 F.3d 1133 (9th Cir. 2011) ........................................................... *passim*

*Katzenmoyer v. TR'BL Mktg. Ltd.*,
    2012 WL 4483047 (S.D. Ohio Sep. 27, 2012) ............................................ 7

*Manikan v. Pac. Ridge Neighborhood Homeowners Ass'n*,
    2017 WL 2953958 (S.D. Cal. July 10, 2017) .............................................. 8

24-cv-01334

*Medtronic, Inc. v. Endologix, Inc.*,
    530 F. Supp. 2d 1054 (D. Minn. 2008)..................................................... 11

*Miller v. Cal. Dep't of Corr. & Rehab.*,
    2012 WL 5336969 (E.D. Cal. Oct. 26, 2012).......................................... 13

*Miller v. Tri Marine Fish Co.*,
    2016 WL 3545523 (C.D. Cal. June 28, 2016) ......................................... 15

*Mitchell v. Tillett*,
    2016 WL 6436820 (N.D. Cal. Oct. 28, 2016) .......................................... 16

*Mohammad v. Gen. Consulate of the State of Kuwait*,
    2020 WL 7315345 (C.D. Cal. Oct. 27, 2020) ............................................ 8

*Mousebelt Labs Pte. Ltd. v. Armstrong*,
    674 F. Supp. 3d 728 (N.D. Cal. 2023).............................................. *passim*

*Mullen Techs., Inc. v. Qiantu Motor (Suzhou) Ltd.*,
    2020 WL 3573371 (S.D. Cal. July 1, 2020) ...................................... 14, 16

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH*,
    2015 WL 6689572 (E.D. Cal. Oct. 30, 2015).......................................... 15

*Ondova Ltd. Co. v. Manila Indus., Inc.*,
    2007 WL 4104192 (N.D. Tex. Nov. 19, 2007) ....................................... 11

*Preston Giuliano Cap. Partners LLC v. Underwriters at Lloyd's London*,
    2018 WL 4178720 (M.D. Fla. Aug. 31, 2018) ........................................ 12

*Roe v. DJA VU Servs.*,
    2019 WL 1895575 (S.D. Cal. Apr. 29, 2019) .................................... 10, 13

*Russell Corp. v. Am. Home Assurance Co.*,
    264 F.3d 1040 (11th Cir. 2001) .............................................................. 11

*Scholz Recycling GmbH v. Yizhou*,
    2021 WL 4476664 (C.D. Cal. Sep. 29, 2021) ........................................ 15

*Sensor Dynamics AG Entwicklungs-Und Produktionsgesellschaft v. Memsco LLC*,
    2008 WL 11343383, (C.D. Cal. Oct. 10, 2008) ...................................... 17

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) .................................................................. 15

24-cv-01334

*Suter v. Munich Reinsurance Co.*,
    223 F.3d 150 (3d Cir. 2000) ........................................................................... 9

*Tech. & Intell. Prop. Strategies Grp. PC v. Insperity, Inc.*,
    2012 WL 6001098 (N.D. Cal. Nov. 29, 2012) ................................................ 16

*Trajkovski Inv. AB v. I.Am.Plus Elecs., Inc.*,
    2021 WL 6135742 (C.D. Cal. Dec. 29, 2021) ................................................ 16

*Twitch Interactive, Inc. v. Fishwoodco GmbH*,
    2023 WL 3751798 (N.D. Cal. May 31, 2023) ................................................. 17

*Ullrich v. Ullrich*,
    2021 WL 6884736 (M.D. Fla. Sep. 3, 2021) .................................................... 9

*United Ass'n Loc. Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*,
    2011 WL 130335 (W.D. Wash. Jan. 14, 2011) .............................................. 16

*Vechery v. Ticket Innovations, Inc.*,
    2009 WL 1160026 (C.D. Cal. Apr. 27, 2009) ................................................ 11

*Weener Plastics, Inc. v. HNH Packaging, LLC*,
    2009 WL 2591291 (E.D.N.C. Aug. 19, 2009) ................................................ 11

**Federal Statutes**

9 U.S.C. § 203 ........................................................................................................ 13

9 U.S.C. § 205 ................................................................................................. *passim*

28 U.S.C. § 1441 .................................................................................................. 7, 8

28 U.S.C. § 1446 ............................................................................................. *passim*

**State Statutes**

Cal. Pen. Code § 496 ........................................................................................ 5, 15

**Other**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, December
    29, 1970, 21 U.S.T. 2517 ............................................................................ *passim*

H.R. Rep. No. 112-10 (2011) ........................................................................... 8, 10

24-cv-01334

Defendants JPMorgan Chase & Co. ("JPMC"), Rick Smith, Neology, Inc. ("Neology"), Francisco Martinez De Velasco and Avery Dennison Corporation ("Avery Dennison") (collectively, "Defendants") jointly oppose Plaintiff Joseph N. Mullis's Motion to Remand filed August 28, 2024 (ECF No. 10).

## I.   <u>INTRODUCTION</u>

Plaintiff began this lawsuit in the Superior Court of California, County of San Diego, on October 13, 2023. His initial Complaint named one defendant, JPMC. JPMC removed the two-party case on diversity grounds on November 16, 2023 (Related Case No. 3:23-cv-02106). On January 26, 2024, Plaintiff filed a First Amended Complaint ("FAC") naming four additional defendants—Mr. Smith, Neology, Mr. Velasco and Avery Dennison. The apparent purpose of the amendment was to destroy diversity, as the facts alleged in the FAC were not new and could have been presented in the initial Complaint. Plaintiff then moved to remand, arguing that the new Defendants (at least Neology) destroyed diversity. Although Plaintiff did not seek leave to file the FAC, the Court allowed the pleading and remanded the action on July 24, 2024, because the parties were no longer diverse. Acknowledging that Defendants might remove again under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, December 29, 1970, 21 U.S.T. 2517 ("New York Convention" or "Convention"), the Court found that subject matter jurisdiction under the Convention should be addressed later.

On July 28, 2024, Neology, which had no opportunity to remove earlier, removed the case to this Court with all Defendants' consent under the Convention. *See* 9 U.S.C. § 205 ("Where the subject matter of an action . . . relates to an arbitration agreement . . . falling under the Convention," removal is permitted "at any time before the trial[.]"). On August 28, 2024, Plaintiff filed the instant Motion to Remand. (ECF No. 10.) He argues that JPMC waived jurisdiction under the Convention and thus could not consent to Neology's removal. (ECF No. 10-1 ("Mot.") at 1.) He also argues that the Court lacks subject matter jurisdiction under the Convention. (*Id.*) Both arguments lack merit.

***First***, putting aside that all Defendants consented to removal, consent was not

24-cv-01334

required in the first place. Plaintiff cites no decision within this District or the Ninth Circuit finding that unanimity is required to remove under the Convention. Plaintiff's Motion also ignores the plain text and legislative history of the applicable removal provisions and omits the recent decision of *Acab v. Chenrosa LLC*, 2024 WL 1283819, at *3 (S.D. Cal. Mar. 26, 2024), where the Honorable Roger Benitez rejected the exact argument Plaintiff is making here. As the Court agreed in *Acab*, "the Convention does not require consent of all Defendants" to remove. *Id.* (citing *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011)). Thus, the Motion's premise is incorrect.

***Second***, if unanimous consent were required, all Defendants have consented to removal, and JPMC did not waive its ability to consent. "[T]he standard waiver analysis is inapposite here, given that removal under § 205 is distinct from traditional removal under 28 U.S.C. § 1446[.]" *Assad v. Josefsson*, 2018 WL 3046958, at *7 (C.D. Cal. June 19, 2018). Because of the "strong preference for a federal forum" in cases removed under the Convention, waiver of removal rights must be "clear and unequivocal," as shown by (1) an explicit statement of waiver, (2) allowing the other party to choose venue, or (3) establishing a state court venue contractually. *See id.* The Motion does not attempt to show such a waiver ground (because none applies), confirming that JPMC may consent to removal (if its consent is required at all).

Moreover, even if there could be an implicit, conduct-based waiver of removal jurisdiction under the Convention, and even if the procedural requirements of 28 U.S.C. § 1446 apply, the 2011 amendments to that statute would *still* defeat Plaintiff's argument for an independent reason. That is, under Section 1446(b)(2)(C), when, as here, "defendants are served at different times, and a later-served defendant files a notice of removal," then "any earlier-served defendant may consent to the removal *even though that earlier-served defendant did not previously initiate or consent to removal*." (emphasis added). Thus, JPMC could consent to Neology's removal under the Convention in any event.

***Third***, the Court has subject matter jurisdiction because this action "relates to" multiple arbitration agreements falling under the Convention. 9 U.S.C. § 205. The Ninth

Circuit has broadly interpreted the phrase "relates to" in § 205 as applying "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case[.]" *Infuturia Global Ltd.*, 631 F.3d at 1138 (emphasis in original) (citing *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("[Federal courts] will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.")). Plaintiff's claims concern a purportedly lost investment in a foreign partnership. He claims the signatories to the underlying investment contracts conspired with Defendants to devalue his equity and force him to relinquish it. Neither the validity of the claims nor Plaintiff's alleged damages can be separated from the investment contracts, all of which fall under the Convention and require arbitration. *See Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, 2023 WL 8845213, at *6 (C.D. Cal. Dec. 19, 2023) ("Because the claims at issue in this case touch matters covered by the [agreement], they 'relate to' the arbitration agreement . . . under § 205."). Although Plaintiff has purposefully declined to name the contract signatories to try to evade jurisdiction and arbitration, under the Convention and equitable estoppel doctrine, he cannot do so. *See, e.g.*, *Mousebelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 736-742 (N.D. Cal. 2023) (compelling arbitration under the Convention and equitable estoppel doctrine where plaintiff filed suit against nonsignatories alleging they conspired with the signatory to destroy plaintiff's investment in a startup company).

Neology properly removed this action to this Court under the Convention, and the Court has subject matter jurisdiction. Remand should be denied.

## II.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims Arise Out of and Relate to Investment Contracts, Yet He Avoids Naming the Actual Signatories to the Contracts as Defendants in an Effort to Evade Arbitration.

Plaintiff began working at Neology in 2003. (*See* ECF No. 1-6, First Amended Complaint ("FAC") ¶ 15.) In or around 2010, OEP Technologie Holding B.V. ("OEP Holding") indirectly acquired a majority interest in Smartrac. (*See id.* ¶ 17; ECF No. 1-10,

Declaration of Rob Harmzen ("Harmzen Decl.") ¶ 6.) The year after, Smartrac acquired a majority interest in Neology. (FAC ¶ 19.)

As part of his employment with Neology, Plaintiff was "offered a stake" in something he calls the "Smartrac Management Equity Program" or "Smartrac MEP." (*Id.* ¶ 20.) Plaintiff incorrectly claims that JPMC "loaned" him €50,000, which was supposedly "used by Smartrac as payment for Mr. Mullis' interest in the Smartrac MEP." (*Id.* ¶ 26.)

What Plaintiff refers to as the "Smartrac MEP" was actually OEP Technologie Beteiligungs GbR ("OEP GbR"), a civil law partnership organized under the laws of Germany. (*See* Harmzen Decl. ¶¶ 7-9, Exs. 1-2.) JPMC did not enter into any loan agreement with Plaintiff for his investment; Plaintiff's agreements were between himself, as borrower, and OEP Holding, as lender. (*See id.*) Indeed, in 2014, OEP Holding and Plaintiff entered into a Sale and Transfer Agreement ("Sale Agreement"), by which OEP Holding sold, and Plaintiff purchased, a "Partial Partnership Interest" in OEP GbR for a total purchase price of €50,000. (*Id.* ¶¶ 7-8, Ex. 1.) Through a contemporaneous "Loan Agreement," OEP Holding, not JPMC, loaned Plaintiff the €50,000 to fund the purchase. (*Id.* ¶ 9, Ex. 2.)

In or about September 2017, Smartrac sold Neology. (*See* FAC ¶ 29.) Plaintiff claims he was "informed" in an email from OEP Holding director Philipp von Meurers that his "investment in the Smartrac MEP had a value of $0[.]" (*Id.* ¶ 32.) Despite his alleged concerns about the valuation (*see id.* ¶¶ 32-38), Plaintiff entered into a Sale and Transfer and Loan Termination Agreement ("Termination Agreement"), by which he sold his Partial Partnership Interest in OEP GbR back to OEP Holding, and OEP Holding terminated the unrepaid €50,000 loan that Plaintiff used to buy his interest initially. (Harmzen Decl. ¶ 10, Ex. 3.) (The Sale Agreement, the Loan Agreement and the Termination Agreement are referred to collectively as the "Mullis/OEP Agreements.")

Plaintiff alleges "[u]pon information and belief" that Defendants "transferred valuable intellectual property from Neology to Smartrac in order to devalue Neology at the time of the sale." (FAC ¶ 30.) Plaintiff also alleges that Defendants "conspired with

4

Smartrac in order to defraud [Plaintiff] and prevent him from obtaining the true value of his interest in the Smartrac MEP." (*Id.* ¶ 158.) Based on these vague allegations, Plaintiff claims he was "coerced" into releasing his investment in OEP GbR, for which he now seeks damages through this lawsuit. (*See* ¶¶ 38, 58, 63, 156, 165.) Even though his allegations are based directly on the Mullis/OEP Agreements, Plaintiff conspicuously avoids naming the actual signatories to the Agreements in this lawsuit in a transparent effort to evade the multiple arbitration provisions contained in the Agreements.

**B.    The Procedural History Shows Jurisdiction Exists.**

In October 2023, more than six years after selling his interest in OEP GbR, Plaintiff sued JPMC in San Diego Superior Court, asserting claims for (1) fraudulent inducement, (2) fraudulent concealment, (3) negligent misrepresentation, and (4) violation of California Penal Code section 496. (ECF No. 1-3.) JPMC removed the two-party case on diversity grounds on November 16, 2023 (Related Case No. 3:23-cv-02106 ("Related Case")). (ECF No. 1-5 at pp. 6-14.) On January 5, 2024, JPMC moved to compel arbitration, and in the alternative, moved to dismiss the Complaint. (*Id.* at pp. 63-132.)

On January 26, 2024, Plaintiff filed the operative FAC naming four additional defendants—Mr. Smith, Neology, Mr. Velasco and Avery Dennison. Plaintiff's FAC also added 14 causes of action based on the same events at issue in the initial Complaint. (ECF No. 1-6 at pp. 2-55.) On February 2, 2024, Plaintiff moved to remand the Related Case, arguing that the FAC destroyed diversity. (*Id.* at pp. 92-104.)

On July 24, 2024, the Court granted Plaintiff's motion to remand, finding diversity was destroyed because Plaintiff's FAC added Neology, a California entity. (ECF No. 1-8 at pp. 142-149.) The Court declined to decide whether the New York Convention provided a separate basis for jurisdiction, indicating that the issue would be considered later, if there were a subsequent removal. (*See id.* at p. 149 ("[T]he Court concludes speculation regarding the future decisions of Defendants and their rights to remove under the Convention is not a sound basis for jurisdiction today.").)

On July 28, 2024, Neology, which was first added and served through the FAC in

24-cv-01334

federal court, removed the case back to this Court under the Convention. (ECF No. 1.) As stated in the Notice of Removal, Neology "never had an opportunity to remove this action until now," and removal under 9 U.S.C. § 205 is permitted at "any time before trial[.]" (*Id.* ¶¶ 9, 33.) Although § 205 does not state that consent by all defendants is required, JPMC, Mr. Smith, Mr. Velasco and Avery Dennison consented to removal anyway. (*Id.* ¶ 10.)

Plaintiff filed the instant Motion on August 28, 2024. He argues unanimity is required under 28 U.S.C. § 1446 and JPMC purportedly cannot consent because, when JPMC first removed the Related Case as the only named defendant, it did so on diversity grounds. (Mot. at pp. 5-9.) Plaintiff also argues that the Court lacks subject matter jurisdiction under 9 U.S.C. § 205. (*Id.* at pp. 9-10.) Both arguments lack merit.

### III.    THE MOTION TO REMAND SHOULD BE DENIED

### A.    There Is a Strong Preference for a Federal Forum in Convention Cases.

The Ninth Circuit explained in *Infuturia* that, "[a]lthough [courts] generally construe removal statutes strictly, [] the plain language of § 205 provides federal courts with remarkably broad removal authority," because "'[e]asy removal is exactly what Congress intended in § 205.'" 631 F.3d at 1138 n.5 (quoting *Beiser*, 284 F.3d at 674). When removal is based on the Convention, "'there is a strong preference for a federal forum[.]'" *Assad*, 2018 WL 3046958, at *7.[1]

"'Section 205 demonstrates congressional intent to provide a federal forum for resolving issues implicating the Convention.'" *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1138 (9th Cir. 2022) (agreeing that the Convention "should be interpreted broadly to effectuate its recognition and enforcement purposes"). Consistent with this intent, when removal is effectuated under 9 U.S.C. § 205, the Ninth Circuit has held that "traditional diversity removal provisions . . . do not apply." *See Infuturia Global Ltd.*, 631 F.3d at 1137.

---

[1] Unless otherwise indicated, internal citations are omitted, and emphases are added in the remainder of this brief.

24-cv-01334

**B.    Defendants Did Not Need to Consent to Removal.**

Plaintiff argues that "a defendant seeking to remove a case from state court to federal court must follow the procedures layout [sic] under 28 U.S.C. § 1446" (Mot. at 5), including that "[w]hen a civil action is removed *solely* under section 1441(a) [28 USCS § 1441(a)], all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). But nowhere does Plaintiff cite authority within this District or the Ninth Circuit applying the so-called rule of unanimity to 9 U.S.C. § 205 removals. (*See* Mot. at 5-7.) Plaintiff also ignores that, six months ago, a court in this District rejected the same argument.

In *Acab v. Chenrosa LLC*, the plaintiffs filed suit in San Diego Superior Court naming two defendants. 2024 WL 1283819, at *1. One defendant removed the case pursuant to 9 U.S.C. § 205. *Id.* Plaintiffs moved to remand, arguing that the removing defendant "did not obtain the consent" of its co-defendant. *Id.* at *3. The removing defendant countered that the Convention does not require consent of all defendants. *Id.* Judge Benitez agreed, finding defendant's argument "both sufficient and convincing." *Id.*

As Judge Benitez explained, "[p]laintiff's consent argument relies on the text" of 28 U.S.C. § 1446(b)(2)(A), which indicates that all defendants' consent to removal is required only when removal of the state court action is effectuated "*solely* under section 1441(a)[.]" *Id.* (emphasis in original). In *Acab*, as in this case, "Defendant [] removed the action under 9 U.S.C. § 205," as well as several other statutes. *Id.* Thus, by its plain text, 28 U.S.C. § 1446(b)(2)(A) is inapplicable, because Neology removed the lawsuit under 9 U.S.C. § 205 and not "solely" under 28 U.S.C. § 1441(a). *Id.*; *cf. Coffey v. Ripple Labs Inc.*, 333 F. Supp. 3d 952, 960 (N.D. Cal. 2018) ("The point being, a defendant may successfully remove an action from state to federal court by pointing to and complying with **a** statutory basis for removal, not **every** statutory basis for removal.") (emphasis in original).[2]

---

[2] *See also Katzenmoyer v. TR'BL Mktg. Ltd.*, 2012 WL 4483047, at *4 (S.D. Ohio Sep. 27, 2012) (applying similar reasoning as *Acab* and denying remand because "all defendants expressly joined in the removal before the state court action proceeded to trial," rather than within 30 days under 28 U.S.C. § 1446(b)), *report and recommendation adopted*, 2012 WL

7

This conclusion is further supported by the legislative history of 28 U.S.C. §1446(b)(2)(A). As described in the House Report that accompanied the passage of 28 U.S.C. §1446(b)(2)(A), "[n]ew subparagraph (b)(2)(A) . . . is limited to cases removed solely under section 1441(a); it has no application to other statutes under which removal is authorized." H.R. Rep. No. 112-10, at p. 13 (2011).

In finding that unanimous consent is not required, Judge Benitez also cited the Ninth Circuit's ruling in *Infuturia*. *See Acab*, 2024 WL 1283819, at *3. There, the appellant argued the district court lacked subject matter jurisdiction because, among other reasons, removal had supposedly violated the forum defendant rule. *Infuturia*, 631 F.3d at 1137. The Ninth Circuit disagreed, explaining that the forum defendant rule is a statutory procedural requirement, not a jurisdictional requirement. *See id.* As the Ninth Circuit put it: "[b]ecause removal . . . was effectuated under 9 U.S.C. § 205, the traditional diversity removal provisions of 28 U.S.C. § 1441 d[id] not apply." *Id.*

Similar reasoning defeats Plaintiff's Motion here. As in *Infuturia*, "[t]he rule of unanimity in 28 U.S.C. § 1446(b)(2)(A) is a procedural requirement, not a jurisdictional prerequisite." *Manikan v. Pac. Ridge Neighborhood Homeowners Ass'n*, 2017 WL 2953958, at *3 (S.D. Cal. July 10, 2017); *accord Mohammad v. Gen. Consulate of the State of Kuwait*, 2020 WL 7315345, at *3 (C.D. Cal. Oct. 27, 2020). In other words, neither the 30-day procedure in 28 U.S.C. § 1446(b)(2)(B) nor the consent procedure in 28 U.S.C. § 1446(b)(2)(A) prevent removal under 9 U.S.C. § 205. *See Infuturia*, 631 F.3d at 1137 (finding "statutory requirements imposed by the general removal statute" inapplicable to § 205 removals); *Acab*, 2024 WL 1283819, at *3 (finding no consent requirement for § 205 removals). Thus, JPMC did not need to consent to Neology's removal, and remand should be denied.

---

4959433 (S.D. Ohio Oct. 17, 2012); *Faulk v. Alcoa Inc.*, 2017 WL 6821869, at *1 (W.D. La. Jan. 31, 2017) (agreeing with defendants that "unanimous written consent was not required for removal" under the Convention).

24-cv-01334

1    **C.      All Defendants Consented to Removal, and JPMC Did Not "Waive" its Ability**

2           **to Consent.**

3           Even if unanimous consent to removal were required, all Defendants have consented.

4    (ECF No. 1 at ¶ 10 ("In addition to Neology, named defendants JPMC, Rick Smith, Avery

5    Dennison Corp., and Francisco Martinez de Velasco all consent to removal.").) Plaintiff

6    argues that JPMC waived its ability to consent (Mot. at 6-9), but that argument lacks merit

7    for two independent reasons.

8           ***First***, a "standard waiver analysis" does not apply because "removal under § 205 is

9    distinct from traditional removal under 28 U.S.C. § 1446[.]" *Assad*, 2018 WL 3046958, at

10   *7. Instead, waiver under 9 U.S.C. § 205 requires a "clear and unequivocal" showing,

11   generally through a "contractual clause." *Id.* (citing *Paradigm Sols. Grp. v. Shanghai*

12   *Precision Tech. Corp.*, 2015 WL 3466017, at *2 (S.D. Cal. June 1, 2015)); *see also China*

13   *N. Indus. Tianjin Corp. v. Grand Field Co.*, 197 F. App'x 543, 544 (9th Cir. 2006) (reversing

14   remand because there was no clear and unequivocal waiver of right to remove under

15   Convention). "There are three ways in which a party may clearly and unequivocally waive

16   its removal rights [under the Convention]: '[1] by explicitly stating that it is doing so, [2]

17   by allowing the other party the right to choose venue, or [3] by establishing an exclusive

18   venue within the contract.'" *Assad*, 2018 WL 3046958, at *7 (citing *Ensco Int'l Inc. v.*

19   *Certain Underwriters at Lloyd's*, 579 F.3d 442, 443-44 (5th Cir. 2009)); *see also Ullrich v.*

20   *Ullrich*, 2021 WL 6884736, at *8 (M.D. Fla. Sep. 3, 2021) ("[S]hort of proceeding to 'trial'

21   in state court, there is no litigation-based, or conduct-based, waiver under § 205.")

22   (collecting case law around the country); *Suter v. Munich Reinsurance Co.*, 223 F.3d 150,

23   162 (3d Cir. 2000) (finding litigation conduct "irrelevant to the question of removal under

24   the Convention Act, which provides that a defendant may remove 'at any time before trial'

25   and imposes no requirement that the defendant show cause for the delay"). Plaintiff does

26   not try to show that one of the three discrete waiver grounds applies (because none does).

27   For this reason alone, Plaintiff's waiver argument fails.

28          ***Second***, even if the procedural requirements of 28 U.S.C. § 1446(b) applied as

24-cv-01334

Plaintiff argues (they do not), and even if there could be a conduct-based waiver under the Convention (there cannot), Plaintiff's argument still ignores the terms of 28 U.S.C. § 1446(b)(2)(C). Section 1446(b)(2)(C) expressly gives earlier-served defendants like JPMC the right to consent to a later-served defendant's removal regardless of past circumstances or conduct. Indeed, under the 2011 amendments to 28 U.S.C. § 1446, "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal *even though that earlier-served defendant did not previously initiate or consent to removal*." 28 U.S.C. § 1446(b)(2)(C).

Courts in this District have applied § 1446(b)(2)(C) to reject conduct-based waivers where a later-served defendant removes the action. *See, e.g.*, *Roe v. DJA VU Servs.*, 2019 WL 1895575, at *4 (S.D. Cal. Apr. 29, 2019) ("'[A]pplying the waiver doctrine to prevent an earlier-served defendant from consenting to removal by a later-served defendant would defeat the purpose of the later-served defendant rule as codified by the 2011 amendments to the removal statute.'"); *Cavanaugh v. Cty. of San Diego*, 2019 WL 3202238, at *3-4 (S.D. Cal. July 16, 2019) (rejecting argument that earlier-served defendants waived consent to removal under § 1446(b)(2)(C)). That conclusion is again supported by the legislative history of 28 U.S.C. §1446(b)(2)(C):

> Fairness to later-served defendants, whether they are brought in by the initial complaint or an amended complaint, necessitates that they be given their own opportunity to remove . . . . This new paragraph clarifies the rule of timeliness and provides for equal treatment of all defendants in their ability to obtain Federal jurisdiction over the case against them . . . .

H.R. Rep. No. 112-10, at p. 14 (2011).

Plaintiff joined Neology in this case through the FAC filed in federal court. (ECF No. 1-6 at pp. 2-55.) Neology was not a party to the case when JPMC initially removed and had no opportunity to remove the case until it was remanded on July 24, 2024. (ECF No. 1-8.) Four days after remand, Neology removed the case with all Defendants' consent under the Convention, which allows removal any time before trial. *See* 9 U.S.C. § 205. Thus:

- Neology and JPMC were served at different times;

24-cv-01334

- Neology's removal was timely; and

- JPMC (an earlier-served defendant) could consent to the removal.

*See* 28 U.S.C. § 1446(b)(2)(C); *Fortenbaugh v. GeoStar Corp.*, 2008 WL 4857931, at *2 (N.D. Cal. Nov. 10, 2008) ("[T]hat all defendants must consent to removal -- the 'unanimity' rule -- does not require that an initial waiver binds all later-served defendants.").[3] For these added reasons, JPMC did not waive jurisdiction under the Convention, and all Defendants properly consented to removal if that consent was required.

**D.  Plaintiff Relies on Distinguishable Authorities.**

The authorities in Plaintiff's Motion also are distinguishable, and none shows that JPMC could not consent to Neology's removal. To begin with, the cases Plaintiff cites finding inability to consent to removal involved defendants that entered a contract (or stipulation) with a forum selection clause requiring a state court venue or a venue of plaintiff's sole choosing. (*See* Mot. at 7-9.)[4] None of these cases involved removals under

---

[3] Because an earlier-served defendant may consent to removal by a later-served defendant despite not previously filing *any* removal, it would make little sense to find that JPMC—which properly removed on diversity grounds when the case was a two-party case between completely diverse parties—somehow waived the federal forum when Plaintiff subsequently added a non-diverse party to destroy diversity. There would be no waiver under § 1446(b)(2)(C) even if JPMC had *never* removed and litigated in state court for months. *See Cavanaugh*, 2019 WL 3202238, at *3-4; *see also Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011) ("There is no reason to lock an earlier-served defendant out of the federal forum, if he later chooses to consent.").

[4] These include: *Vechery v. Ticket Innovations, Inc.*, 2009 WL 1160026, at *1 (C.D. Cal. Apr. 27, 2009); *Grand View PV Solar Two, LLC v. Helix Elec., Inc./Helix Elec. of Nev., L.L.C., J.V.*, 847 F.3d 255, 258 (5th Cir. 2017); *Gulf Coast Pharm. Plus, LLC v. RFT Consulting, Inc.*, 2024 WL 3862045, at *4 (S.D. Miss. Aug. 19, 2024); *Weener Plastics, Inc. v. HNH Packaging, LLC*, 2009 WL 2591291, at *6 (E.D.N.C. Aug. 19, 2009); *Ondova Ltd. Co. v. Manila Indus., Inc.*, 2007 WL 4104192, at *2 (N.D. Tex. Nov. 19, 2007); *Helford v. Cheyenne Petroleum Co.*, 2015 WL 5771835, at *1-2 (N.D. Tex. Aug. 6, 2015); *Advanced Mktg., Int'l, Inc. v. Ferguson*, 2006 WL 1679417, at *2-3 (M.D. Fla. June 14, 2006); *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1046-49 (11th Cir. 2001); *Cattleman's Choice Loomix, LLC v. Heim*, 2011 WL 1884720, at *2-4 (D. Colo. May 18, 2011); *Medtronic, Inc. v. Endologix, Inc.,* 530 F. Supp. 2d 1054, 1056-58 (D. Minn. 2008); *Amerisource Funding, Inc. v. SKIBA*, 2009 WL 6472946, at *3 (S.D. Tex. Nov. 17, 2009).

24-cv-01334

9 U.S.C. § 205, the Convention's strong preference for a federal forum, or even conduct-based waivers. Thus, these authorities do not fit or show how JPMC waived anything.

Plaintiff also cites no case from within this District or the Ninth Circuit that even considered a 9 U.S.C. § 205 removal. Instead, he cites three out-of-Circuit cases[5] at odds with recent intra-District authority. (*See* Section III.B, *supra*.) These out-of-Circuit cases are distinguishable for several other reasons: (i) none involved consent to removal by a later-served defendant; (ii) none applied 28 U.S.C. § 1446(b)(2)(C), which expressly gives an "earlier-served defendant," like JPMC, the right to consent regardless of past actions; (iii) none considered the narrow grounds for a clear and unequivocal waiver of Convention jurisdiction (*see* Section III.C, *supra*); and (iv) none involved a situation where a new party removed after an amended pleading destroyed diversity. For example, in *Bradshaw Constr.*, the defendant raised Convention jurisdiction in a footnote in opposition to a motion to remand. 2016 WL 8739603, at *3. In *Preston Giuliano Cap. Partners*, the removing defendants sought an amendment of their own removal notice. 2018 WL 4178720, at *2. In *Emps. Ins. of Wausau*, the removing defendants filed two successive notices of removal, both of which did not include three other co-defendants. 787 F. Supp. at 166. *Emps. Ins. of Wausau* also was decided nearly twenty years before the terms of 28 U.S.C. § 1446(b)(2)(C) were added by amendment. The facts here are different.

When JPMC first removed, this was a two-party case with complete diversity, and JPMC's investigation of Plaintiff's third-party contracts was ongoing. JPMC properly removed on diversity grounds given its 30-day deadline to do so. (ECF No. 1-5 at pp. 6-14.) After JPMC later moved to compel arbitration or dismiss, Plaintiff filed the FAC without leave of Court and for the apparent purpose of destroying diversity, as the facts alleged were not new and could have been presented in the initial Complaint. (ECF No. 1-6 at pp. 2-55.)

---

[5] These include: *Bradshaw Constr. Corp. v. Underwriters at Lloyd's, London*, 2016 WL 8739603 (S.D. Fla. Jan. 8, 2016); *Preston Giuliano Cap. Partners LLC v. Underwriters at Lloyd's London*, 2018 WL 4178720 (M.D. Fla. Aug. 31, 2018); *Emps. Ins. of Wausau v. Certain Underwriters at Lloyd's, London*, 787 F. Supp. 165 (W.D. Wis. 1992).

24-cv-01334

When Plaintiff moved to remand, all Defendants made clear they intended to rely on Convention jurisdiction if the FAC were allowed to stand, including removing again, if necessary. (ECF No. 1-7 at pp. 33-34, 49.) Within four days of the initial remand, Neology, which had no chance to remove earlier, removed under the Convention with all Defendants' consent. (ECF No. 1.)

This history does not show "an intentional relinquishment" of a "known right" by "clear and convincing" evidence. *See generally Cruz v. Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1270 (9th Cir. 2018). Nor does it show that JPMC is barred from consenting to Neology's removal. *See, e.g.*, *Miller v. Cal. Dep't of Corr. & Rehab.*, 2012 WL 5336969, at *7 (E.D. Cal. Oct. 26, 2012) ("The parties who first removed the case on August 6, 2010 . . . were entirely different from the parties who later removed the case on March 8, 2012[.] . . . [T]he Removing Defendants did not forfeit their rights to removal because of the earlier removal attempt over which they had no choice.") *report and recommendation adopted*, 2012 WL 6088304 (E.D. Cal. Dec. 6, 2012). Nor does it negate the plain text and legislative history of 28 U.S.C. §1446(b)(2)(C), which expressly permits an earlier-served defendant, like JPMC, to consent to removal by a later-served defendant, like Neology. *See Roe*, 2019 WL 1895575, at *4 n.4 ("[W]hether [the earlier-served] Defendants waived their initial right to remove is irrelevant in light of the Court's finding above that [the later-served defendant] SFBSC had an independent right of removal.").

In short, Plaintiff has cited no case finding that an earlier-served defendant could not consent to a later-served defendant's removal under the Convention, let alone could not consent because of an alleged conduct-based waiver. Plaintiff's inapposite authorities confirm that the Motion is unsupported.

**E.      The Court Has Subject Matter Jurisdiction under the New York Convention.**

"An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." *See* 9 U.S.C. § 203. Removal is proper "[w]here the subject matter of an action or proceeding pending in a State court ***relates to*** an arbitration agreement . . . falling under the Convention[.]" *See* 9 U.S.C. § 205.

24-cv-01334

"The statute invites removal of cases whose relation to an agreement . . . under the Convention is based on an affirmative defense," rather than on grounds apparent on the "face of the complaint." *Infuturia*, 631 F.3d at 1138. The Ninth Circuit has broadly interpreted the phrase "relates to" in 9 U.S.C. § 205 as meaning "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case[.]" *Id.* (emphasis in original) (citing *Beiser*, 284 F.3d at 669 ("[T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.")).

"In deciding whether the parties entered an arbitration agreement falling under the Convention, courts consider four questions: (1) is there a written agreement to arbitrate; (2) is the agreement commercial in nature; (3) does the agreement designate a country that is a signatory to the Convention; and (4) is a party to the agreement a foreign citizen or entity." *See Mullen Techs., Inc. v. Qiantu Motor (Suzhou) Ltd.*, 2020 WL 3573371, at *3 (S.D. Cal. July 1, 2020) (citing *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1243 (S.D. Cal. 2000)).

This action (1) "relates to" multiple arbitration agreements (2) falling under the Convention. The Sale Agreement, Loan Agreement and Termination Agreement at the heart of this case all contain broad arbitration provisions governed by the Convention. Under established estoppel principles, Defendants may invoke these arbitration agreements as nonsignatories. Thus, the Court should retain jurisdiction.

### 1. Plaintiff's claims "relate to" the Mullis/OEP Agreements.

The Mullis/OEP Agreements contain broad arbitration provisions requiring all disputes arising out of or in connection with the Agreements to be arbitrated in Germany. (Harmzen Decl., Ex. 1 § 5.2; Ex. 2 § 6.5; Ex. 3 § 5.3.) All of Plaintiff's claims "relate to" the Mullis/OEP Agreements (9 U.S.C. § 205); indeed, the Agreements provide the basis for Plaintiff's investment at issue, his tort and statutory claims, and his alleged injuries.

The phrase "'relates to' is plainly broad" and "has been interpreted to convey sweeping removal jurisdiction[.]" *Acab*, 2024 WL 1283819, at *3. An arbitration

24-cv-01334

agreement also may "relate to" the subject matter of an action where the named defendants "are not parties to the agreement." *Miller v. Tri Marine Fish Co.*, 2016 WL 3545523, at *5-9 (C.D. Cal. June 28, 2016) (explaining that enforceability arguments are "premature" in the "determination of initial jurisdiction"). "'As long as the defendant's assertion [of jurisdiction] is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to'.'" *Freaner v. Valle*, 2011 WL 5596919, at *3 (S.D. Cal. Nov. 17, 2011).[6]

All Plaintiff's claims come within the sweeping removal jurisdiction of 9 U.S.C. § 205. Plaintiff alleges that Defendants misrepresented and concealed facts about his rights under the Mullis/OEP Agreements. (*See* FAC ¶¶ 158-161, 208-218, 288-298, 341-359.) He alleges that Defendants induced him to release his investment via the Termination Agreement. (*See id.* ¶¶ 241-268.) He also alleges that Defendants purportedly violated California Penal Code § 496 by taking money that should have been paid to him because of his investment, which was (i) governed by the Mullis/OEP Agreements, (ii) obtained through the Sale Agreement and Loan Agreement, and (iii) relinquished through the Termination Agreement. (*Id.* ¶¶ 82-90, 101-104.) In other words, Plaintiff's disputes not only "relate to" the Mullis/OEP Agreements but depend on them. *See Am. Chung Nam, LLC*, 2023 WL 8845213, at *6 ("Because the claims at issue . . . touch matters covered by the [agreement], they 'relate to' the arbitration agreement . . . under § 205."); *Scholz Recycling GmbH v. Yizhou*, 2021 WL 4476664, at *8 (C.D. Cal. Sep. 29, 2021) (finding

---

[6] The Ninth Circuit also applies an expansive construction to arbitration provisions that, by their terms, apply to all disputes "arising out of or in connection with" the agreement, as the Mullis/OEP Agreements do here. (Harmzen Decl., Ex. 1 § 5.2; Ex. 2 § 6.5; Ex. 3 § 5.3.) *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) (arbitration clause applying to "all disputes arising in connection with this Agreement" is expansive). "Thus, when an arbitration agreement employs the phrase 'in connection with,' a party's factual allegations 'need only 'touch matters' covered by the contract containing the arbitration clause' in order for the court to require arbitration." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH*, 2015 WL 6689572, at *6 (E.D. Cal. Oct. 30, 2015).

Convention jurisdiction over fraud claims and finding it immaterial that plaintiffs did not advance a breach of contract claim).[7]

### 2.    The Mullis/OEP Agreements fall under the Convention.

The Mullis/OEP Agreements fall under the Convention because they (1) are in writing, (2) arise from a commercial relationship, (3) require arbitration in Germany (a Convention signatory), and (4) include at least one signatory that is not an American citizen. *See Mullen Techs.*, 2020 WL 3573371, at *3; *Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009). Plaintiff contests none of these points in his Motion.

*First*, the written agreements Plaintiff signed each contain "an arbitral clause in a contract or an arbitration agreement[.]" *Mousebelt Labs Pte. LTD*, 674 F. Supp. 3d at 734. Thus, there is a written agreement to arbitrate. (*See* Harmzen Decl., Exs. 1-3.)

*Second*, the Mullis/OEP Agreements are commercial in nature because they relate to purchase and sale of shares in a private partnership for economic gain. *See Trajkovski Inv. AB v. I.Am.Plus Elecs., Inc.*, 2021 WL 6135742, at *3 (C.D. Cal. Dec. 29, 2021) (finding agreement for purchase of stock commercial in nature under the Convention); *see also Mitchell v. Tillett*, 2016 WL 6436820, at *1 (N.D. Cal. Oct. 28, 2016) (agreement that flowed from course of employment was commercial under the Convention); *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, 2020 WL 5106851, at *17 (N.D. Cal. Aug. 31, 2020) ("[T]he SMIA involves a commercial relationship, as it relates to 'business transactions[.]'").

*Third*, the Mullis/OEP Agreements require arbitration in Germany (Harmzen Decl.,

---

[7] *See also Tech. & Intell. Prop. Strategies Grp. PC v. Insperity, Inc.*, 2012 WL 6001098, at *11-13 (N.D. Cal. Nov. 29, 2012) (finding claims alleging fraudulent inducement and fraudulent misrepresentations about subject matter of contract arbitrable); *United Ass'n Loc. Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*, 2011 WL 130335, at *4 (W.D. Wash. Jan. 14, 2011) ("Big Rooter's fraudulent inducement and misrepresentation claims are subject to the arbitration provision[.]"); *Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *3-7 (N.D. Cal. Apr. 6, 2011) (compelling arbitration of fraudulent inducement and negligent misrepresentation claims despite narrower contract language than exists here).

24-cv-01334

Ex. 1 § 5.2; Ex. 2 § 6.5; Ex. 3 § 5.3)—a signatory to the Convention. *See Twitch Interactive, Inc. v. Fishwoodco GmbH*, 2023 WL 3751798, at *8 (N.D. Cal. May 31, 2023) (noting Germany is a Convention signatory) *report and recommendation adopted in part and rejected in part on other grounds*, 2023 WL 7458374 (N.D. Cal. Nov. 9, 2023); *Sensor Dynamics AG Entwicklungs-Und Produktionsgesellschaft v. Memsco LLC*, 2008 WL 11343383, at *2 (C.D. Cal. Oct. 10, 2008) (similar).

**Fourth**, OEP Holding, a party to the Mullis/OEP Agreements, is organized under the laws of the Netherlands and is therefore a citizen of the Netherlands. (Harmzen Decl. ¶ 1; Ex. 1 p. 1.) *See Mousebelt Labs Pte. LTD*, 674 F. Supp. 3d at 734 ("MouseBelt is organized under the laws of Singapore and is therefore a citizen of Singapore.").

Thus, the Mullis/OEP Agreements fall under the Convention, and removal is proper any time before trial. 9 U.S.C. § 205.

### 3.    *Plaintiff cannot evade arbitration by suing nonsignatories.*

Defendants, as nonsignatories, also may remove and compel arbitration under the equitable estoppel doctrine. The Supreme Court has held that nonsignatories may invoke the equitable estoppel doctrine in cases falling under the Convention. *See GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1646 (2020) ("Nothing in the drafting history suggests that the Convention sought to prevent contracting states from applying domestic law that permits nonsignatories to enforce arbitration agreements in additional circumstances."); *see also Infuturia*, 631 F.3d at 1138-39 (rejecting argument that privity of contract is required for removal jurisdiction).

To decide whether a nonsignatory may compel arbitration under the Convention, courts apply federal common law. *See Mousebelt Labs Pte. LTD*, 674 F. Supp. 3d at 740. In the Ninth Circuit, equitable estoppel applies when "'the subject matter in dispute [is] intertwined with the contract providing for arbitration.'" *Id.* at 740-41 (citing *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1169 (9th Cir. 2021)). The intertwinement standard is satisfied when the plaintiff's claims are based on rights that exist "only by virtue" of the contracts containing arbitration provisions, and the harm allegedly suffered

"cannot be divorced from" those rights. *See Mousebelt Labs Pte. LTD*, 674 F. Supp. 3d at 741. The standard also is satisfied "where the signatory raises allegations of collusive conduct between the nonsignatory and other signatories." *Id.* at 742.

"That is, a subject matter in dispute may be properly characterized as intertwined with the contract providing for arbitration where the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory, ***or*** where the signatory raises allegations of collusive conduct between the nonsignatory and other signatories." *Id.* (emphasis added); *accord Am. Chung Nam, LLC*, 2023 WL 8845213, at *8 ("Under federal common law, equitable estoppel requires that the subject matter of the dispute be 'intertwined with the contract providing for arbitration.' . . . This standard is satisfied where a signatory 'raises allegations of collusive misconduct between the nonsignatory and other signatories.'"). The standard is satisfied both ways here.

***First***, Plaintiff's alleged damages are the purported monies he should have received for his interest in the Smartrac MEP, but for Defendants' purported conduct that "devalue[d]" Plaintiff's equity and caused him to relinquish his interest. (FAC ¶¶ 88, 113-114, 149, 152, 159, 196, 205, 208, 244, 258, 274, 284, 288, 297.) Yet Plaintiff acquired his interest through the Sale Agreement and Loan Agreement. (Harmzen Decl., Exs. 1-2.) The value of that interest is determined by the Sale Agreement and the incorporated OEP GbR partnership agreement (including its earnout provisions). (*See id.*, Ex. 1 §§ 1.2, 1.3, 4.1, 4.2; *see also* FAC Ex. 1 (describing earnout calculation).) And Plaintiff alleges that Defendants fraudulently induced him to sell his interest for inadequate value by entering into the Termination Agreement. (*See* FAC ¶ 262; Harmzen Decl., Ex. 3 §§ 1.1, 1.2, 1.3.)

Thus: Plaintiff's claims only exist because of the Mullis/OEP Agreements; any determination of Plaintiff's rights or the value of his interest depends on the Mullis/OEP Agreements; and neither the validity of the claims nor Plaintiff's alleged damages can be determined without the Mullis/OEP Agreements, all of which require arbitration. Put differently, Plaintiff's claims are based on allegations that Defendants purportedly destroyed the value of his investment (FAC ¶¶ 88, 113-114, 149, 152, 158-159, 195-196,

205, 208, 244, 258, 254, 284, 288, 297), and the alleged harm "cannot be divorced from" the underlying investment agreements. *Mousebelt Labs Pte. LTD*, 674 F. Supp. 3d at 741.

***Second***, equitable estoppel also applies because Plaintiff alleges collusive misconduct between OEP Holding (a signatory) and Defendants (nonsignatories). *See Am. Chung Nam, LLC*, 2023 WL 8845213, at *8. Plaintiff alleges a purported scheme to devalue Neology to force Plaintiff to release his interest in the Smartrac MEP. (*See* FAC ¶¶ 88, 113-114, 149, 152, 158-159, 195-196, 205, 208, 244, 258, 254, 284, 288, 297.) The purported participants in that scheme include not only Defendants, but also OEP Holding, including through its director, Philipp von Meurers. (*See id.* ¶ 29; Harmzen Decl., Exs. 1-3 at signature pages.) Thus, the dispute is "properly characterized as intertwined with the contract[s]" for the added reason that Plaintiff alleges "collusive conduct between the nonsignatory and other signatories." *Mousebelt Labs Pte. LTD*, 674 F. Supp. 3d at 742.

Ignoring the broad removal standard and the several ways his claims relate to the Mullis/OEP Agreements,[8] Plaintiff argues that his claims arise from a June 12, 2012 introductory letter from Smartrac. (*See* Mot. at 10.) This cursory argument supports Defendants' position. The letter states that Plaintiff would be invited to join the Smartrac "MEP" in the future, and that Smartrac was "not yet in the position to present the program" details. (ECF No. 10-5 at p. 3.) The letter provides no rights to Plaintiff and was a precursor to the Mullis/OEP Agreements. (*See id.*) If Plaintiff's claims relate to the letter as he argues, then they clearly relate to the Mullis/OEP Agreements as well. Thus, Plaintiff's argument only confirms the centrality of the Mullis/OEP Agreements and why there is subject matter jurisdiction. *See Acab*, 2024 WL 1283819, at *3 (the phrase "relates to" in § 205 "convey[s] sweeping removal jurisdiction"); *Freaner*, 2011 WL 5596919, at *3 ("'As long as the defendant's assertion [of jurisdiction] is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that

---

[8] As this stage, Defendants need only show that Plaintiff's claims "relate to" an arbitration agreement falling under the Convention. 9 U.S.C. § 205. As shown above, however, the grounds for compelling arbitration under the equitable estoppel doctrine are strong.

24-cv-01334

is required to meet the low bar of 'relates to'.'").

## IV.    **CONCLUSION**

JPMC did not need to consent for Neology to remove this action under the Convention. Even if consent were required, all Defendants properly consented. The Court has subject matter jurisdiction under the Convention, which provides for broad federal jurisdiction. Defendants, as nonsignatories, may remove and compel arbitration under the equitable estoppel doctrine. For all these reasons, remand should be denied.

Dated: September 27, 2024          GREENBERG TRAURIG, LLP

                                   By: */s/ Michael E. McCarthy*
                                       Michael E. McCarthy
                                       Layal L. Bishara
                                       *Attorneys for Defendants*
                                       *JPMORGAN CHASE & CO. and RICK*
                                       *SMITH*

Dated: September 27, 2024          GOODWIN PROCTER LLP

                                   By: */s/ Laura A. Stoll*
                                       Laura A. Stoll
                                       Ariel E. Rogers
                                       601 South Figueroa Street
                                       Los Angeles, CA 90017
                                       Tel: (213) 426-2625
                                       Fax: (213) 289-7725
                                       LStoll@goodwinlaw.com
                                       ARogers@goodwinlaw.com
                                       *Attorneys for Defendant*
                                       *AVERY DENNISON CORPORATION*

Dated: September 27, 2024          FOLEY HOAG LLP

                                   GLASER WEIL FINK HOWARD JORDAN &
                                   SHAPIRO LLP

                                   By: */s/ Robert Haney Jr.*
                                       Robert Haney Jr. – *Admitted Pro Hac Vice*

24-cv-01334

FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 812-0400
RHaney@foleyhoag.com

Leah S. Rizkallah – *Admitted Pro Hac Vice*
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
LRizkallah@foleyhoag.com

Emil A. Petrossian
Alexander Miller
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
600 West Broadway, Suite 1080
San Diego, CA 92101
Tel: (619) 765-4380
EPetrossian@glaserweil.com
AMiller@glaserweil.com
*Attorneys for Defendants*
*NEOLOGY, INC. and FRANCISCO*
*MARTINEZ DE VELASCO*

I, Michael E. McCarthy, certify that the content of DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION TO REMAND is acceptable to all parties signing this motion, as required by the United States District Court for the Southern District of California Electronic Case Filing Administrative Policies and Procedures.

Dated: September 27, 2024          GREENBERG TRAURIG, LLP

By: */s/ Michael E. McCarthy*
       Michael E. McCarthy
       *Attorneys for Defendants*
       *JPMORGAN CHASE & CO. and RICK*
       *SMITH*

24-cv-01334