Michael E. McCarthy (SBN 301010)
mccarthyme@gtlaw.com
Layal L. Bishara (SBN 329154)
bisharal@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: (310) 586-7700
Fax: (310) 586-7800
Attorneys for Defendants
JPMORGAN CHASE & CO. and RICK SMITH

*Additional Defendants and Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>J.P. MORGAN CHASE & CO., a Delaware corporation; RICK SMITH, an individual; NEOLOGY, INC., a Delaware corporation; FRANCISCO MARTINEZ DE VELASCO, an individual; AVERY DENNISON CORP., a Delaware Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-01334-JES-MSB<br><br>(Related to Case No. 3:23-cv-02106)<br><br>Assigned to Hon. James E. Simmons, Jr.<br><br>**DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Filed concurrently with Declarations of Robert Harmzen and Michael E. McCarthy; Proposed Order<br><br>Date Removed: July 29, 2024<br>Trial Date: None Set<br><br>Hearing Date: February 12, 2025<br>Hearing Time: 9:00 a.m.<br>Courtroom: 4B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 12, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4B of the above-captioned Court, located at 221 West Broadway, San Diego, California 92101, Defendants JPMorgan Chase & Co. ("JPMC"), Rick Smith, Neology, Inc. ("Neology"), Francisco Martinez De Velasco and Avery Dennison Corp. ("Avery Dennison") (collectively, "Defendants") will jointly move the Court for an order (1) compelling Plaintiff Joseph N. Mullis to arbitrate his claims and (2) staying this action pending completion of arbitration.

Plaintiff's claims arise from and are intertwined with written agreements containing broad arbitration provisions that require Plaintiff to arbitrate his disputes. The agreements are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (commonly known as the "New York Convention" or "Convention"), December 29, 1970, 21 U.S.T. 2517, which Congress incorporated into federal law in the Federal Arbitration Act. *See* 9 U.S.C. § 201. Plaintiff is bound by the terms of the agreements he signed, and Defendants are entitled to compel arbitration under the equitable estoppel doctrine. All of Plaintiff's claims are within the scope of the broad arbitration provisions. Under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and the Convention, 9 U.S.C. §§ 201 *et seq.*, the Court should thus compel arbitration. This action also should be stayed pending completion of arbitration. 9 U.S.C. § 3.[1]

This Motion is filed pursuant to the Court's Orders entered August 12, 2024 (ECF No. 5) and December 6, 2024 (ECF No. 26).[2] This Motion is based on this Notice of Motion

---

[1] In the alternative, and subject to and without waiving Defendants' right to compel arbitration, Defendants are filing an Omnibus Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Neology defendants and Avery Dennison also are filing supplemental Motions to Dismiss. The Court need not reach the 12(b)(6) Motions if it compels arbitration.

[2] This Motion, Defendants' Omnibus Motion to Dismiss and the supplemental Motions to Dismiss of the Neology defendants and Avery Dennison, were initially filed in substantially the same form in Related Case No. 3:23-cv-02106 ("Related Case"), at ECF Nos. 42-45. Those motions were submitted under an order in the Related Case providing for a joint

2

1  and Motion, the accompanying Memorandum of Points and Authorities and Proposed

2  Order, the Declarations of Robert Harmzen and Michael E. McCarthy, all pleadings and

3  files in this action, all matters of which this Court may take judicial notice, and upon such

4  further evidence as may be presented to the Court at or before the hearing on this Motion.

5      This Motion is made following the conference of all parties' counsel that took place

6  by telephone on December 12, 2024.

7                                    Respectfully submitted,

8  Dated: December 19, 2024          GREENBERG TRAURIG, LLP

9                                    By: /s/ Michael E. McCarthy

10                                        Michael E. McCarthy
11                                        Layal L. Bishara
                                          *Attorneys for Defendants*
12                                        *JPMORGAN CHASE & CO. and RICK*
                                          *SMITH*
13

14  Dated: December 19, 2024          GOODWIN PROCTER LLP

15                                    By: /s/ Laura A. Stoll

16                                        Laura A. Stoll
17                                        Ariel E. Rogers
                                          601 South Figueroa Street
18                                        Los Angeles, CA 90017
19                                        Tel: (213) 426-2625
                                          Fax: (213) 289-7725
20                                        LStoll@goodwinlaw.com
21                                        ARogers@goodwinlaw.com
                                          *Attorneys for Defendant*
22                                        *AVERY DENNISON CORPORATION*
23

24  _____
25  motion to compel arbitration not to exceed 20 pages, an omnibus motion to dismiss not to
    exceed 20 pages, and supplemental individual motions to dismiss not to exceed 10 pages
26  each. (*See* Related Case, ECF No. 40.) Defendants submit this Motion and supporting
27  Memorandum under the Court's order of August 12, 2024 in this case (ECF No. 5), in which
    the Court directed the Defendants to re-file and re-notice their responsive pleadings from
28  the Related Case within fourteen days of an order denying remand.

24-cv-01334

1    Dated: December 19, 2024                 FOLEY HOAG LLP

2
                                             GLASER WEIL FINK HOWARD JORDAN &
3                                            SHAPIRO LLP

4                                            By: */s/ Robert Haney, Jr.*

5                                                    Robert Haney, Jr. (Admitted *Pro Hac Vice*,
                                                     NY Bar No. 221450)
6                                                    FOLEY HOAG LLP
                                                     1301 Avenue of the Americas
7                                                    New York, NY 10019
                                                     Tel: (212) 812-0399
8                                                    rhaney@foleyhoag.com
9

10                                                   Leah Rizkallah (Admitted *Pro Hac Vice*,
                                                     MA Bar No. 696949)
11                                                   FOLEY HOAG LLP
                                                     155 Seaport Boulevard
12                                                   Boston, MA 02210
                                                     Tel: (617) 832-1000
13                                                   lrizkallah@foleyhoag.com
14

15
                                                     Emil Petrossian
16                                                   Alexander R. Miller
                                                     GLASER WEIL FINK HOWARD JORDAN
17                                                   & SHAPIRO LLP
                                                     600 West Broadway, Suite 2150
18                                                   San Diego, CA 92101
                                                     Tel: (619) 765-4380
19                                                   EPetrossian@glaserweil.com
                                                     AMiller@glaserweil.com
20                                                   *Attorneys for Defendants*
                                                     *NEOLOGY, INC. and*
21                                                   *FRANCISCO MARTINEZ DE VELASCO*
22

23

24

25

26

27

28

24-cv-01334

I, Michael E. McCarthy, certify that the content of DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF is acceptable to all parties signing this motion, as required by the United States District Court for the Southern District of California Electronic Case Filing Administrative Policies and Procedures.

Dated: December 19, 2024          GREENBERG TRAURIG, LLP

                                  By: */s/ Michael E. McCarthy*
                                       Michael E. McCarthy
                                       *Attorneys for Defendants*
                                       *JPMORGAN CHASE & CO. and RICK*
                                       *SMITH*

24-cv-01334

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ............................................................................ 1

II.  FACTUAL BACKGROUND............................................................................... 3

    A.   Plaintiff Obtains Shares in OEP Technologie Beteiligungs GbR in 2014....... 3

    B.   Plaintiff Sells His Shares in OEP GbR Back to OEP Holding in 2018. .......... 3

    C.   Plaintiff Agrees to Arbitration Multiple Times................................................ 4

    D.   Relevant Procedural Background...................................................................... 4

    E.   The Broad Arbitration Provisions Cover the Claims Asserted. ....................... 5

III. PLAINTIFF MUST ARBITRATE HIS CLAIMS .............................................. 6

    A.   Courts Must Rigorously Enforce Arbitration Agreements. ............................. 6

    B.   An Agreement to Arbitrate Exists under the New York Convention. ............. 7

    C.   The Broad Arbitration Provisions Cover Plaintiff's Claims........................... 9

    D.   Plaintiff Cannot Evade Arbitration By Suing Non-Signatories..................... 11

        1.   Equitable estoppel applies in cases governed by the Convention. ...... 11

        2.   Plaintiff is bound by the arbitration agreements under well-established estoppel principles. ................................................... 12

    E.   The Arbitration Agreements Are Not Void, Inoperative or Incapable of Being Performed. ................................................................................................... 15

IV.  THE COURT SHOULD STAY THE ACTION PENDING ARBITRATION ....... 16

V.   CONCLUSION................................................................................................ 18

i

24-cv-01334

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Shutterfly, Inc.*,
    2020 U.S. Dist. LEXIS 167910 (N.D. Cal. Sep. 14, 2020) ........................... 14

*Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*,
    2023 U.S. Dist. LEXIS 227709 (C.D. Cal. Dec. 19, 2023) ............................ 12, 14, 15

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
    785 F.3d 1320 (9th Cir. 2015) ........................................................................ 7

*Balen v. Holland Am. Line, Inc.*,
    583 F.3d 647 (9th Cir. 2009) .......................................................................... 8

*Bogicevic v. Seaborn Cruise Line Ltd.*,
    580 F. Supp. 3d 970 (W.D. Wash. 2022) ........................................................ 7

*Caroline Cho v. Casnak LLC*,
    2022 U.S. Dist. LEXIS 207138 (C.D. Cal. Sep. 7, 2022) ............................. 17

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
    109 F. Supp. 2d 1236 (S.D. Cal. 2000) .............................................. 6, 15, 17

*Daisley v. Blizzard Music Ltd. (US)*,
    2017 U.S. Dist. LEXIS 66171 (C.D. Cal. May 1, 2017) ............................... 10

*Daniels v. Painter*,
    2016 U.S. Dist. LEXIS 200621 (C.D. Cal. Sep. 16, 2016) ........................... 10

*Day v. Orrick, Herrington & Sutcliffe, LLP*,
    42 F.4th 1131 (9th Cir. 2022) ................................................................... 6, 11

*Ding Ding v. Structure Therapeutics, Inc.*,
    2024 U.S. Dist. LEXIS 196549 (N.D. Cal. Oct. 29, 2024) ............................. 9

*DotC United, Inc. v. Google Asia Pac. Pte. Ltd.*,
    2023 U.S. Dist. LEXIS 75512 (N.D. Cal. May 1, 2023) ............................... 11

*Ferguson v. Corinthian Colls., Inc.*,
    733 F.3d 928 (9th Cir. 2013) ..................................................................... 7, 10

ii

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,
    2020 U.S. Dist. LEXIS 158387 (N.D. Cal. Aug. 31, 2020) ............................................. 8

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
    590 U.S. 432 (2020) ........................................................................................................... 11

*Gsc Dev. v. Jinlong Indus. Co.*,
    2017 U.S. Dist. LEXIS 235508 (C.D. Cal. Dec. 4, 2017) ........................................... 17

*Hopkins & Carley, ALC v. Thomson Elite*,
    2011 U.S. Dist. LEXIS 38396 (N.D. Cal. Apr. 6, 2011) ............................................ 10

*Intershop Commc'ns AG v. Superior Court*,
    104 Cal. App. 4th 191 (2002) ......................................................................................... 16

*Kilgore v. KeyBank, N.A.*,
    673 F.3d 947 (9th Cir. 2012) .......................................................................................... 16

*Leyva v. Certified Grocers of Cal. Ltd.*,
    593 F.2d 857 (9th Cir. 1979) .......................................................................................... 17

*Mitchell v. Tillett*,
    2016 U.S. Dist. LEXIS 153686 (N.D. Cal. Oct. 28, 2016) .......................................... 8

*Mohebbi v. Khazen*,
    2014 U.S. Dist. LEXIS 168351 (N.D. Cal. Dec. 4, 2014) ........................................... 15

*Mousebelt Labs Pte. LTD v. Armstrong*,
    2023 U.S. Dist. LEXIS 97679 (N.D. Cal. May 24, 2023) ................................... *passim*

*Mullen Techs., Inc. v. Qiantu Motor (Suzhou) Ltd.*,
    2020 U.S. Dist. LEXIS 116323 (S.D. Cal. July 1, 2020) ..................................... *passim*

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH*,
    2015 U.S. Dist. LEXIS 147717 (E.D. Cal. Oct. 29, 2015) ........................................... 9

*Optimum Prods. v. HBO*,
    839 F. App'x 75 (9th Cir. 2020) ....................................................................................... 9

*Rogers v. Royal Caribbean Cruise Line*,
    547 F.3d 1148 (9th Cir. 2008) ........................................................................................ 15

*Sensor Dynamics AG Entwicklungs-Und Produktionsgesellschaft v. Memsco LLC*,
    2008 U.S. Dist. LEXIS 126616 (C.D. Cal. Oct. 10, 2008) ........................................... 8

24-cv-01334

*Setty v. Shrinivas Sugandhalaya LLP*,
   3 F.4th 1166 (9th Cir. 2021) ........................................................................ 12

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ................................................................... 9, 15

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) ...................................................................................... 16

*Tech. & Intellectual Prop. Strategies Grp. Prof'l Corp. v. Insperity, Inc.*,
   2012 U.S. Dist. LEXIS 170714 (N.D. Cal. Nov. 29, 2012) ................... 10, 15

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ...................................................................... 15

*Trajkovski Inv. AB v. I.Am.Plus Elecs., Inc.*,
   2021 U.S. Dist. LEXIS 247685 (C.D. Cal. Dec. 29, 2021) ............................ 8

*Twitch Interactive, Inc. v. Fishwoodco GmbH*,
   2023 U.S. Dist. LEXIS 94786 (N.D. Cal. May 31, 2023) ............................... 8

*United Ass'n Local Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*,
   2011 U.S. Dist. LEXIS 5922 (W.D. Wash. Jan. 14, 2011) ........................... 10

*Wolf v. Langemeier*,
   2010 U.S. Dist. LEXIS 87017 (E.D. Cal. Aug. 24, 2010) ............................ 17

**Statutes**

9 U.S.C. § 3 ............................................................................................... 16, 17

9 U.S.C. § 201 ............................................................................................. 6, 17

9 U.S.C. § 205 ............................................................................................... 2, 5

9 U.S.C. § 206 ........................................................................................ 2, 7, 18

9 U.S.C. § 208 ....................................................................................... 6, 17, 18

**Other Authorities**

https://www.disarb.org/en/ ......................................................................... 11, 16

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

This dispute relates to Plaintiff Joseph N. Mullis's investment in OEP Technologie Beteiligungs GbR, a private partnership organized in Germany ("OEP GbR"). The value of Plaintiff's partnership interest in OEP GbR was tied to the performance of OEP Technologie B.V. ("OEP Technologie") and its subsidiaries, including SMARTRAC N.V. ("Smartrac").[3] Between 2014 and 2018, Plaintiff and OEP Technologie Holding B.V. ("OEP Holding")[4] entered into a series of agreements under which Plaintiff borrowed €50,000 from OEP Holding, used those funds to purchase a partial interest in OEP GbR, and then later sold that interest back to OEP Holding. These agreements included, among others, a 2014 Sale and Transfer Agreement, a 2014 Loan Agreement, and a 2018 Sale and Transfer and Loan Termination Agreement (collectively, the "Mullis/OEP Agreements"). Defendants JPMorgan Chase & Co. ("JPMC"), Rick Smith, Neology, Inc. ("Neology"), Francisco Martinez De Velasco and Avery Dennison Corporation ("Avery Dennison") (collectively "Defendants") were not parties to the Mullis/OEP Agreements or any agreements with Plaintiff that are the genesis of this action.

Plaintiff initially filed this action against JPMC in state court, claiming that JPMC conspired with OEP Holding to deflate the value of his partnership interest before he sold it in May 2018. JPMC removed the two-party case on diversity grounds on November 16, 2023 (Related Case No. 3:23-cv-02106). On January 26, 2024, Plaintiff filed a First Amended Complaint ("FAC") adding Mr. Smith, Neology, Mr. Velasco and Avery Dennison. Plaintiff then moved to remand, arguing that the new Defendants (at least Neology) destroyed diversity. Although Plaintiff did not seek leave to file the FAC, the Court (the Hon. Roger Benitez) allowed the pleading and remanded the action on July 24,

---

[3] OEP Technologie and Smartrac are Dutch companies, and Smartrac was a manufacturer of radio frequency identification inlays.

[4] OEP Holding is the direct parent company of OEP Technologie. It also is an indirect subsidiary of Defendant JPMC.

2024, because the parties were no longer diverse. On July 28, 2024, Neology, which had no opportunity to remove earlier, removed the case back to this Court with all Defendants' consent under the Convention. *See* 9 U.S.C. § 205. On August 28, 2024, Plaintiff moved to remand again, arguing that JPMC purportedly waived jurisdiction under the Convention and that the Court lacked subject matter jurisdiction. (ECF No. 10.) The Court rejected Plaintiff's arguments and denied remand. (ECF No. 26.) This Motion follows.

In his operative FAC, Plaintiff now claims that all Defendants were "involved" in the purported scheme to devalue his investment in OEP GbR. (*See* ECF No. 1-6, FAC ¶¶ 12, 157-158.) Putting aside the lack of merit, Plaintiff's claims do not belong in court because he repeatedly agreed to arbitrate them in the Mullis/OEP Agreements. The Mullis/OEP Agreements contain broad arbitration provisions requiring all disputes arising out of or in connection with the Agreements to be arbitrated in Germany. All of Plaintiff's claims arise from and are intertwined with the Agreements, and Defendants, as nonsignatories, may compel arbitration under the equitable estoppel doctrine.

The Mullis/OEP Agreements fall under the Convention because they (1) are in writing, (2) arise from a commercial relationship, (3) require arbitration in Germany (a Convention signatory), and (4) include at least one signatory that is not an American citizen. *See Mullen Techs., Inc. v. Qiantu Motor (Suzhou) Ltd.*, 2020 U.S. Dist. LEXIS 116323, at *7 (S.D. Cal. July 1, 2020).[5] The equitable estoppel doctrine requires Plaintiff to arbitrate his claims against Defendants because "'the subject matter of the dispute is intertwined with the contract[s] providing for arbitration.'" *See Mousebelt Labs Pte. LTD v. Armstrong*, 2023 U.S. Dist. LEXIS 97679, at *20 (N.D. Cal. May 24, 2023) (citation omitted). Under Chapter 2 of the Federal Arbitration Act ("FAA"), the Court may compel arbitration in Germany under the Convention. *See* 9 U.S.C. § 206. Thus, the Court should grant this Motion, compel arbitration and stay this action pending completion of arbitration.

---

[5] When Plaintiff moved to remand, he did not dispute that the Mullis/OEP Agreements fall under the Convention. (*See* ECF No. 26 at 6-7.)

24-cv-01334

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Obtains Shares in OEP Technologie Beteiligungs GbR in 2014.

The FAC attempts to obscure the facts to avoid arbitration. According to the FAC, in or around December 2011, Smartrac acquired a majority interest in Neology, where Plaintiff had worked since 2003. (*See* FAC ¶¶ 15, 19.) As part of his employment with Neology, Plaintiff claims he was "offered a stake" in what he calls the "Smartrac Management Equity Program." (*Id.* ¶¶ 20, 25.) Plaintiff claims that JPMC loaned him €50,000 to facilitate his investment in this so-called "Smartrac MEP." (*See id.* ¶¶ 20, 25-26.)

What Plaintiff refers to as the "Smartrac MEP[,]" however, was actually OEP GbR, the above-mentioned civil law partnership organized under German law. (*See id.* ¶¶ 20, 25-26; Declaration of Robert Harmzen ("Harmzen Decl.") ¶¶ 6-9, Exs. 1-2.) Plaintiff's partnership interest in OEP GbR allowed him an "investment stake in OEP Technologie and its subsidiaries, including Smartrac[.]" (Harmzen Decl. ¶¶ 6-7.) JPMC did not issue the €50,000 loan to Plaintiff to facilitate the investment; rather, the alleged €50,000 loan was issued by OEP Holding, as lender, to Plaintiff, as borrower. (*Id.* ¶ 9, Ex. 2.)

Indeed, OEP Holding and Plaintiff entered into the 2014 Sale and Transfer Agreement ("Sale Agreement"), pursuant to which OEP Holding sold, and Plaintiff purchased, a "Partial Partnership Interest" in OEP GbR for a total purchase price of €50,000. (*Id.* ¶¶ 7-8, Ex. 1.) Through a contemporaneous Loan Agreement, OEP Holding loaned Plaintiff the €50,000 to fund the purchase. (*Id.* ¶ 9, Ex. 2.)

### B.    Plaintiff Sells His Shares in OEP GbR Back to OEP Holding in 2018.

In or about September 2017, Smartrac sold Neology. (*See* FAC ¶ 29.) As part of the sale, Plaintiff alleges he was "informed" that his partnership stake "had a value of $0[.]" (*See id.* ¶ 32; Harmzen Decl. ¶¶ 7-9, Exs. 1-2.) Plaintiff alleges that company executives— including OEP Holding Director, Philipp von Meurers, and Smartrac CEO, Christian Uhl— refused to provide him information regarding his partnership stake or Neology's sale. (*See* FAC ¶¶ 29, 32, 34-35, Ex. 1; Harmzen Decl. ¶¶ 7-9, Exs. 1-2.)

3

Despite these alleged concerns, on or about May 23, 2018, Plaintiff entered into a Sale and Transfer and Loan Termination Agreement ("Termination Agreement"), pursuant to which Plaintiff sold his "Partial Partnership Interest" in OEP GbR back to OEP Holding, and OEP Holding terminated the €50,000 loan issued to Plaintiff, such that Plaintiff was relieved of his obligation to repay the loan. (*See* Harmzen Decl. ¶ 10, Ex. 3.)

## C.    Plaintiff Agrees to Arbitration Multiple Times.

The 2014 Sale Agreement (Harmzen Decl., Ex. 1 § 5.2) and 2018 Termination Agreement (*Id.*, Ex. 3 § 5.3) contain virtually identical arbitration provisions, stating:

> All disputes arising out of or in connection with this Agreement, including its validity shall be finally settled in accordance with the Arbitration Rules of the German Institution of Arbitration e.V. *(DIS Rules)* without recourse to the ordinary courts of law. The place of arbitration shall be Frankfurt [am Main], Germany. The arbitral tribunal shall consist of three arbitrators. The language of the arbitral proceedings is English. Oral hearings may be conducted in another language if all parties participating in the hearing and the arbitrators agree so.

The Loan Agreement also includes a separate arbitration agreement (Harmzen Decl., Ex. 2), stating:

> All disputes arising between the parties to the loan agreement in connection with the loan agreement or its validity shall be finally settled in accordance with the Arbitration Rules of the German Institution of Arbitration *(DIS Rules)* without recourse to the ordinary courts of law. The place of arbitration shall be Frankfurt am Main. The number of arbitrators is three. The language of the arbitral proceedings is English. Oral hearings may be conducted in another language if all parties participating in the hearing and the arbitrators agree so.

## D.    Relevant Procedural Background.

Plaintiff filed this lawsuit against JPMC on October 13, 2023—several years after he executed the Termination Agreement at the heart of the case. JPMC removed the two-party case on diversity grounds on November 16, 2023 (Related Case No. 3:23-cv-02106 ("Related Case")). (ECF No. 1-5 at 6-14.) On January 5, 2024, JPMC moved to compel arbitration and, in the alternative, to dismiss the Complaint. (*Id.* at 63-132.)

On January 26, 2024, rather than responding to JPMC's motions, Plaintiff filed the

operative FAC naming four additional defendants—Mr. Smith, Neology, Mr. Velasco and Avery Dennison. Plaintiff's FAC also added 14 causes of action based on the same events at issue in the initial Complaint. (*See* ECF No. 1-6 at 2-55.) On February 2, 2024, Plaintiff moved to remand the Related Case, arguing that the FAC destroyed diversity. (*Id.* at 92-104.) The Court (the Hon. Roger Benitez) granted Plaintiff's motion to remand on July 24, 2024, finding diversity was destroyed because the FAC added Neology, a California entity. (ECF No. 1-8 at 142-149.)

On July 28, 2024, Neology, which was first added and served through the FAC in federal court, removed the case back to this Court under the Convention with all Defendants' consent. (ECF No. 1.) Plaintiff moved to remand again on August 28, 2024, arguing that (i) JPMC could not consent to Neology's removal because JPMC purportedly waived jurisdiction under the Convention, and (ii) the Court lacked subject matter jurisdiction under 9 U.S.C. § 205. (*See* ECF No. 10-1.) The Court rejected both arguments and denied remand in an Order entered December 6, 2024. (ECF No. 26.)

**E.    The Broad Arbitration Provisions Cover the Claims Asserted.**

In his operative FAC, Plaintiff alleges that JPMC valued Neology in connection with the September 2017 sale and "held Neology's debt" at the time. (FAC ¶ 29.) With no supporting facts, Plaintiff speculates that all named Defendants, OEP Holding and Smartrac "conspired . . . in order to defraud Mr. Mullis and prevent him from obtaining the true value of his interest in the Smartrac MEP." (*See id.* ¶¶ 12, 29-35, 84-90, 157-158, 262-263.) He alleges that Defendants and Smartrac "concealed" the (unspecified) "true value" of Neology and Plaintiff's partnership interest, and that had he known the (unidentified) facts, he would not have entered the Termination Agreement and released his interest. (*See id.* ¶¶ 254-263, 289-306; Harmzen Decl. ¶ 10, Ex. 3.)

Plaintiff asserts eighteen causes of action grounded in these allegations: (1) violation of California's Unfair Competition Law ("UCL"); (2) unjust enrichment; (3) violation of California Penal Code § 496; (4) conversion; (5) aiding and abetting conversion; (6) negligence; (7) fraud; (8) aiding and abetting fraud; (9) breach of fiduciary duty; (10) aiding

and abetting breach of fiduciary duty; (11) fraudulent misrepresentation; (12) aiding and abetting fraudulent misrepresentation; (13) fraudulent inducement; (14) aiding and abetting fraudulent inducement; (15) fraudulent concealment; (16) aiding and abetting fraudulent concealment; (17) negligent misrepresentation; and (18) constructive fraud.

All the claims are subject to arbitration, as Plaintiff agreed to arbitrate "[a]ll disputes arising [out of]" or "in connection with" the Sale Agreement, Loan Agreement or Termination Agreement, including any disputes over the Agreements' "validity." (Harmzen Decl. ¶ 8, Ex. 1 § 5.2; ¶ 9, Ex. 2 § 6.5; ¶ 10, Ex. 3 § 5.3.) For example, when the Court denied Plaintiff's second remand motion, it found that "Plaintiff's claims, at minimum, 'touch matters' covered by the Mullis/OEP Agreements." (ECF No. 26 at 7.) The Court also found that Plaintiff's claims "stem from the loss of his economic interest—an interest that flows from those agreements." (*Id.*) And it agreed with Defendants that "any determination of Plaintiff's rights or the value of his [purported] interest depends on the Mullis/OEP Agreements, and neither the validity of the claims nor Plaintiff's alleged damages can be determined without the Mullis/OEP Agreements." (*Id.* at 8.)

### III.   <u>PLAINTIFF MUST ARBITRATE HIS CLAIMS</u>

### A.   **Courts Must Rigorously Enforce Arbitration Agreements.**

"Congress enacted Chapter Two of the [FAA], *see* 9 U.S.C. §§ 201-208, to provide for the effective and efficient resolution of international arbitral disputes after the United States entered into the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, June 1958) ('the New York Convention' or 'Convention')." *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1133 (9th Cir. 2022). Federal policy creates a strong presumption favoring enforcement of arbitration agreements, and that policy "'applies with special force in the field of international commerce.'" *See Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000).[6]

---

[6] Unless otherwise indicated, all internal citations are omitted and all emphases are added.

Generally, in deciding whether to compel arbitration under the FAA, a court must determine two issues: (1) whether there is an agreement to arbitrate; and (2) whether the agreement covers the dispute. *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]'" *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013).

Under the Convention, "[c]ourts determining whether to compel arbitration . . . should conduct a 'very limited inquiry.'" *Bogicevic v. Seabourn Cruise Line Ltd.*, 580 F. Supp. 3d 970, 974 (W.D. Wash. 2022). "'Under Chapter 2 of the FAA, courts apply a two-step analysis' when a party moves to compel arbitration pursuant to an agreement governed by the Convention." *Id.* "First, the court analyzes four preliminary questions to determine whether an arbitration agreement exists that falls under the Convention." *Id.* Second, "[i]f the court finds the existence of such an agreement, it must order arbitration unless it finds the agreement 'null and void, inoperative or incapable of being performed' under the Convention." *See Mullen Techs., Inc.*, 2020 U.S. Dist. LEXIS 116323, at *7. The Court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

No matter which test is applied, all elements are satisfied. ***First***, an agreement to arbitrate exists, which falls under the Convention. ***Second***, Plaintiff's claims are covered by the broad arbitration provisions in the Mullis/OEP Agreements. ***Third***, Plaintiff cannot evade arbitration against Defendants under the equitable estoppel doctrine, which applies to agreements governed by the Convention. ***Fourth***, there are no grounds to find the arbitration agreements void, inoperative or incapable of being performed. Thus, Plaintiff's agreement to arbitrate should be rigorously enforced, and he should be compelled to arbitrate his claims as stated in the contracts he repeatedly signed.

**B.    An Agreement to Arbitrate Exists under the New York Convention.**

An agreement "falls under the Convention" if it meets four requirements: (1) there is a written agreement to arbitrate; (2) the agreement is commercial in nature; (3) the

agreement provides for arbitration in the territory of a Convention signatory; and (4) a party to the agreement is a foreign citizen or entity, or the commercial relationship has some reasonable relation with one or more foreign states. *See Mullen Techs., Inc.*, 2020 U.S. Dist. LEXIS 116323, at *7; *Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009). Plaintiff already tacitly recognized that the Mullis/OEP Agreements fall under the Convention. (*See* ECF No. 26 at 6 ("[T]he parties do not dispute that the Mullis/OEP Agreements fall under the Convention[.]").) This is not surprising because all four elements are easily met.

**First**, the written agreements Plaintiff signed each contain "an arbitral clause in a contract or an arbitration agreement[.]" *Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *7. Thus, there is a written agreement to arbitrate. (Harmzen Decl., Exs. 1-3.)

**Second**, the Mullis/OEP Agreements are commercial in nature because they relate to purchase and sale of shares in a private partnership for economic gain. *See Trajkovski Inv. AB v. I.Am.Plus Elecs., Inc.*, 2021 U.S. Dist. LEXIS 247685, at *8 (C.D. Cal. Dec. 29, 2021) (finding agreement for purchase of stock commercial in nature under the Convention); *see also Mitchell v. Tillett*, 2016 U.S. Dist. LEXIS 153686, at *2 (N.D. Cal. Oct. 28, 2016) (agreement that flowed from course of employment was commercial under the Convention); *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, 2020 U.S. Dist. LEXIS 158387, at *51 (N.D. Cal. Aug. 31, 2020) ("[T]he SMIA involves a commercial relationship, as it relates to 'business transactions[.]'").

**Third**, the Mullis/OEP Agreements require arbitration in Germany (Harmzen Decl., Ex. 1 § 5.2; Ex. 2 § 6.5; Ex. 3 § 5.3)—a signatory to the Convention. *See Twitch Interactive, Inc. v. Fishwoodco GmbH*, 2023 U.S. Dist. LEXIS 94786, at *21 (N.D. Cal. May 31, 2023) (noting Germany is a Convention signatory); *Sensor Dynamics AG Entwicklungs-Und Produktionsgesellschaft v. Memsco LLC*, 2008 U.S. Dist. LEXIS 126616, at *4 (C.D. Cal. Oct. 10, 2008) (similar).

**Fourth**, OEP Holding, a party to the Mullis/OEP Agreements, is organized under the laws of the Netherlands and is therefore a citizen of the Netherlands. (Harmzen Decl. ¶ 1;

Ex. 1 p. 1.) *See Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *8 ("MouseBelt is organized under the laws of Singapore and is therefore a citizen of Singapore."). The Mullis/OEP Agreements also involve purchase of shares in a German partnership and envisage enforcement in Germany, thus showing a reasonable relation to a foreign state. *See Ding Ding v. Structure Therapeutics, Inc.*, 2024 U.S. Dist. LEXIS 196549, at *11 (N.D. Cal. Oct. 29, 2024) (reasonable relation to foreign state is shown where the commercial relationship involves property abroad or envisages performance or enforcement abroad).

Thus, all four requirements are met, and the Mullis/OEP Agreements fall under the Convention—a point that Plaintiff has not challenged in this case. (*See* ECF No. 26 at 6.)

**C.    The Broad Arbitration Provisions Cover Plaintiff's Claims.**

The arbitration provisions in the Mullis/OEP Agreements are broad and easily cover the disputes at issue. The Ninth Circuit applies an expansive construction to arbitration provisions that, like those here, apply to all disputes "arising out of or in connection with" the agreement. (Harmzen Decl., Exs. 1-3.) *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) (arbitration clause stating that it applies to "all disputes arising in connection with this Agreement" must be interpreted expansively). "Thus, when an arbitration agreement employs the phrase 'in connection with,' a party's factual allegations 'need only 'touch matters' covered by the contract containing the arbitration clause' in order for the court to require arbitration." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH*, 2015 U.S. Dist. LEXIS 147717, at *16 (E.D. Cal. Oct. 29, 2015); *see also Optimum Prods. v. HBO*, 839 F. App'x 75, 78 (9th Cir. 2020) (affirming order compelling arbitration because arbitration clause was "broad" and applied to any disputes "arising out of" the agreement).

All Plaintiff's claims come within this broad scope. For example, Plaintiff alleges that Defendants fraudulently induced him to enter into the Termination Agreement. (FAC ¶¶ 247-263, 271-275.) He alleges that Defendants defrauded him and breached purported fiduciary duties with respect to the Partial Partnership Interest that is the subject of the Mullis/OEP Agreements. (*See id.* ¶¶ 147-161, 168-173, 181-183, 190-196, 203-223, 230-

235, 282-306, 313-318, 326-334, 341-359.) And he alleges conversion, unjust enrichment, and violations of Penal Code § 496 and the UCL based on Defendants' purported theft of his Partial Partnership Interest—which he obtained through the Sale Agreement and Loan Agreement, and relinquished through the Termination Agreement. (*See id.* ¶¶ 52-59, 66-72, 82-92, 100-104, 111-116.)

These disputes directly "aris[e] out of" and are "connect[ed] with" the Mullis/OEP Agreements and are thus covered by the arbitration provisions in all three Agreements. (Harmzen Decl., Ex. 1 § 5.2; Ex. 2 § 6.5; Ex. 3 § 5.3; *see* ECF No. 26 at 7 ("Plaintiff's claims, at minimum, 'touch matters' covered by the Mullis/OEP Agreements.").) *See also Tech. & Intellectual Prop. Strategies Grp. Prof'l Corp. v. Insperity, Inc.*, 2012 U.S. Dist. LEXIS 170714, at *32-38 (N.D. Cal. Nov. 29, 2012) (finding claims alleging fraudulent inducement and fraudulent and negligent misrepresentations about subject matter of contract arbitrable); *United Ass'n Local Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*, 2011 U.S. Dist. LEXIS 5922, at *10 (W.D. Wash. Jan. 14, 2011) ("Big Rooter's fraudulent inducement and misrepresentation claims are subject to the arbitration provision[.]"); *Hopkins & Carley, ALC v. Thomson Elite*, 2011 U.S. Dist. LEXIS 38396, at *9-23 (N.D. Cal. Apr. 6, 2011) (compelling arbitration of fraudulent inducement and negligent misrepresentation claims despite narrower contract language); *Daniels v. Painter*, 2016 U.S. Dist. LEXIS 200621, at *16 (C.D. Cal. Sep. 16, 2016) (finding claims for conversion, unjust enrichment and breach of fiduciary duty all "fit within" the arbitration provision's "in connection with" language).

Further, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson*, 733 F.3d at 938 (holding that terms in enrollment agreement requiring arbitration of "any dispute" and "all claims" "arising from my enrollment" covered claims that the school misrepresented the value and cost of an education); *see also Daisley v. Blizzard Music Ltd. (US)*, 2017 U.S. Dist. LEXIS 66171, at *18 (C.D. Cal. May 1, 2017) ("Keeping in mind that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' the Court concludes that

10

plaintiff's fraud claim . . . touch[es] and arise[s] from the Songwriter Agreements.").[7]

**D.   Plaintiff Cannot Evade Arbitration By Suing Non-Signatories.**

Defendants, as nonsignatories, may compel arbitration under the equitable estoppel doctrine. The doctrine applies to agreements governed by the Convention, and it applies here because Plaintiff's claims are intertwined with the contracts requiring arbitration.

**1.    Equitable estoppel applies in cases governed by the Convention.**

The Supreme Court has held that nonsignatories may invoke the equitable estoppel doctrine to compel arbitration in cases falling under the New York Convention. *See GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 442 (2020) ("Nothing in the drafting history suggests that the Convention sought to prevent contracting states from applying domestic law that permits nonsignatories to enforce arbitration agreements in additional circumstances."); *see also Day*, 42 F.4th at 1135-36 (explaining that, in *GE Energy*, the Supreme Court determined that the doctrine of equitable estoppel "does not conflict with the Convention, and so is applicable in international arbitrations").

To decide whether a nonsignatory may compel arbitration in a case under the Convention, courts apply federal common law rather than state law. *See Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *13 ("[C]ourts apply federal common law 'in determining the arbitrability in federal claims by or against non-signatories to an arbitration agreement.'"); *DotC United, Inc. v. Google Asia Pac. Pte. Ltd.*, 2023 U.S. Dist. LEXIS 75512, at *7-8 (N.D. Cal. May 1, 2023) ("[T]he Court finds federal substantive law governs the arbitrability question in this action brought under the New York Convention given 'the need for uniformity in the application of international arbitration agreements.'").

---

[7] Under the German Arbitration Institute's DIS Rules, when claims rely on more than one arbitration agreement, they may be decided in a single arbitration, and any disputes about whether the arbitration agreements are "compatible shall be decided by the arbitration tribunal." *See* German Arbitration Institute (DIS), DIS Arbitration Rules, Rule 17.2, at https://www.disarb.org/en/tools-for-dis-proceedings/dis-rules.

24-cv-01334

Under Ninth Circuit common law, equitable estoppel applies when "'the subject matter in dispute [is] intertwined with the contract providing for arbitration.'" *Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *22 (citing *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1169 (9th Cir. 2021)). The intertwinement standard is satisfied where the plaintiff's claims are predicated on rights that exist "only by virtue" of the contracts containing arbitration provisions, and the harm allegedly suffered "cannot be divorced from" those rights. *See Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *22-23. The standard also is satisfied "where the signatory raises allegations of collusive conduct between the nonsignatory and other signatories." *Id.* at *26.

"That is, a subject matter in dispute may be properly characterized as intertwined with the contract providing for arbitration where the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory, *or* where the signatory raises allegations of collusive conduct between the nonsignatory and other signatories." *Id.*; *accord Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, 2023 U.S. Dist. LEXIS 227709, at *21 (C.D. Cal. Dec. 19, 2023) ("Under federal common law, equitable estoppel requires that the subject matter of the dispute be 'intertwined with the contract providing for arbitration.' . . . This standard is satisfied where a signatory 'raises allegations of collusive misconduct between the nonsignatory and other signatories.'"). Here, the intertwinement standard is satisfied both ways.

## 2. Plaintiff is bound by the arbitration agreements under well-established estoppel principles.

Plaintiff's claims and alleged injuries derive from and depend on the Mullis/OEP Agreements, each of which requires arbitration. Plaintiff also alleges collusive misconduct between Defendants and OEP Holding concerning his partnership interest that is the subject of the Mullis/OEP Agreements. For each reason, Plaintiff is equitably estopped from avoiding arbitration.

*First*, Plaintiff's alleged damages are the purported monies that he should have received for his Partial Partnership Interest in OEP GbR, but for Defendants' purported

1   conduct that "devalued" Plaintiff's equity and caused him to relinquish his interest. (*See,*
2   *e.g.*, FAC ¶¶ 129, 134, 140, 152, 156, 160-161, 205, 215-216, 218, 220, 235, 244, 252, 258,
3   261, 294, 300, 304, 348, 353, 356, 359.) Yet Plaintiff acquired his partnership interest
4   through the Sale Agreement and Loan Agreement. (Harmzen Decl., Exs. 1-2.) The value of
5   that interest is determined pursuant to the Sale Agreement and the incorporated OEP GbR
6   partnership agreement (including its earnout provisions). (*See id.*, Ex. 1 §§ 1.2, 1.3, 4.1, 4.2;
7   *see also* FAC Ex. 1 (describing earnout calculations under the OEP GbR partnership
8   agreement).) And Plaintiff alleges that Defendants fraudulently induced him to sell his
9   interest by entering into the Termination Agreement. (*See* FAC ¶¶ 242-263, 270-275;
10  Harmzen Decl., Ex. 3 §§ 1.1, 1.2, 1.3.) In other words, as the Court found when it denied
11  remand: Plaintiff's claims only exist by virtue of the Mullis/OEP Agreements; any
12  determination of Plaintiff's rights or the value of his partnership interest depends on the
13  Mullis/OEP Agreements; and neither the validity of the claims nor Plaintiff's alleged
14  injuries can be divorced from the Mullis/OEP Agreements, all of which require arbitration.
15  (*See* ECF No. 26 at 6-8.)

16          The recent *Mousebelt* case is instructive. There, the plaintiff invested more than
17  $300,000 in a crowdsourcing platform, Knowledgr, in exchange for preferred stock and
18  other interests. 2023 U.S. Dist. LEXIS 97679, at *2. Plaintiff made the investments through
19  agreements with arbitration clauses covering "[a]ll disputes, controversies, or differences
20  arising out of or in connection with" the agreements. *Id.* at *3. Plaintiff later filed suit
21  against several nonsignatories alleging that they conspired with Knowledgr to abandon the
22  company and "annihilate" the value of plaintiff's equity. *Id.* at *4-5. The court compelled
23  arbitration under the Convention and the doctrine of equitable estoppel, holding that the
24  disputes were intertwined with the investment agreements. *Id.* at *6-7, *22-23. The court
25  observed that the claims were "predicated on allegations that Defendants induced"
26  Knowledgr to "abdicate [its] contractual obligations" to plaintiff, which "obligations
27  existed only by virtue of" the investment agreements. *Id.* at *22-23. Further, plaintiff's
28  alleged damages hinged on the contractual rights in the investment agreements. *Id.*

This case is analogous. Any right or interest Plaintiff has to the Partial Partnership Interest, as well as the value of that interest, hinges on Plaintiff's contractual rights in the Mullis/OEP Agreements, as well as the validity of the Termination Agreement. Like in *Mousebelt*, Plaintiff's claims are predicated on allegations that Defendants purportedly destroyed the value of Plaintiff's investment through a scheme of wrongful conduct with the signatory, and the alleged harm "cannot be divorced from" the underlying agreements. 2023 U.S. Dist. LEXIS 97679, at *22-23. Thus, the "subject matter in dispute" is "properly characterized as intertwined with the contract[s] providing for arbitration[.]" *Id.* at *26. (*See also* ECF No. 26 at 8 ("[N]either the validity of the claims nor Plaintiff's alleged damages can be determined without the Mullis/OEP Agreements.").)

**Second**, equitable estoppel also applies because Plaintiff alleges collusive misconduct between OEP Holding (a signatory) and Defendants (nonsignatories). *See Am. Chung Nam, LLC*, 2023 U.S. Dist. LEXIS 227709, at *21 (intertwinement "is satisfied where a signatory 'raises allegations of collusive misconduct between the nonsignatory and other signatories'"). The FAC alleges a scheme to "artificially devalue" Neology "in order to avoid paying" Plaintiff "just compensation" for his investment. (*See, e.g.*, FAC ¶¶ 12, 56, 114, 149, 158, 205, 223, 254, 263, 306.) The purported participants in that scheme include not only the Defendants, but also OEP Holding, including through its Director, Philipp von Muerers. (*See id.* ¶¶ 12, 29, 32, FAC Ex. 1; Harmzen Decl., Exs. 1-3 at signature pages (showing Philipp von Muerers signing for OEP Holding with the "Title: B Director").) Thus, the dispute is "properly characterized as intertwined with the contract[s]" for the additional reason that Plaintiff alleges "collusive conduct between the nonsignatory and other signatories." *Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *26.[8]

---

[8] In addition, OEP Holding is an indirect subsidiary of JPMC (Harmzen Decl. ¶ 1), and "'[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.'" *Allen v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 167910, at *23 (N.D. Cal. Sep. 14, 2020).

14

1    In sum, to allow Plaintiff to evade arbitration by suing Defendants "would render the

2    arbitration agreement ineffective and run contrary to the federal policy favoring arbitration,

3    which applies with special force in the international commercial context." *Am. Chung Nam,*

4    *LLC*, 2023 U.S. Dist. LEXIS 227709, at *22 (compelling arbitration under equitable

5    estoppel doctrine and New York Convention). Thus, the Court should compel arbitration

6    under settled estoppel principles.

7    **E.    The Arbitration Agreements Are Not Void, Inoperative or Incapable of Being**

8    **Performed.**

9    There is no basis to find the Mullis/OEP Agreements unenforceable under the

10    Convention (or otherwise). Enforceability is not a state law question. *See Chloe Z Fishing*

11    *Co.*, 109 F. Supp. 2d at 1258-59. Rather, "[o]nly internationally recognized contract

12    formation defenses or public policy concerns of the forum nation can render an arbitration

13    agreement unenforceable under Article II of the Convention." *Mullen Techs., Inc.*, 2020

14    U.S. Dist. LEXIS 116323, at *9. Any doubts about "applicable contract defenses[] are to

15    be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th

16    Cir. 2016). Courts narrowly construe the "null and void" exception, and the burden to

17    establish that an arbitration agreement is "null and void" rests with the party opposing

18    arbitration. *See Chloe Z Fishing Co.*, 109 F. Supp. 2d at 1259; *Rogers v. Royal Caribbean*

19    *Cruise Line*, 547 F.3d 1148, 1158-59 (9th Cir. 2008).

20    Plaintiff cannot invalidate the arbitration agreements he repeatedly signed. For

21    example, his fraudulent inducement claims do not permit him to avoid arbitration. *See*

22    *Simula*, 175 F.3d at 726 (affirming that claim for fraudulent inducement was arbitrable);

23    *Tech. & Intellectual Prop. Strategies Grp. Prof'l Corp.*, 2012 U.S. Dist. LEXIS 170714, at

24    *37 ("Plaintiff does not appear to be challenging the specific arbitration provision of the

25    CSA as fraudulent; rather, Plaintiff's claim of fraud/fraud in the inducement attacks the

26    validity of the CSA as a whole."); *Mohebbi v. Khazen*, 2014 U.S. Dist. LEXIS 168351, at

27    *14-18 (N.D. Cal. Dec. 4, 2014) (finding fraudulent inducement claim arbitrable because

28    there was no evidence that defendant purposefully hid the arbitration provision on the

contract's face).[9]

Any argument challenging Plaintiff's agreement to arbitrate in Germany also fails. *See, e.g.*, *Mullen Techs., Inc.* 2020 U.S. Dist. LEXIS 116323, at *9-10 (rejecting argument that venue in Singapore was inconvenient because plaintiff consented to the venue by signing the agreement). If anything, "enforcement of the [arbitration provision] makes sense under the circumstances here," because the contracts involve the purchase and sale of shares "in a German [partnership.]" *Cf. Intershop Commc'ns AG v. Superior Court*, 104 Cal. App. 4th 191, 200-201 (2002) (concluding as a matter of law that no public policy was violated by enforcing forum selection clause and transferring case to Germany).

Nor are the arbitration agreements incapable of being performed. "For more than one hundred years, the German Arbitration Institute (DIS) has been the leading institution in Germany for the administration of arbitrations and other alternative dispute resolution proceedings for national and international commercial disputes." (*See* German Arbitration Institute (DIS), at https://www.disarb.org/en/about-us/about-us.) Thus, because Plaintiff has not established (and cannot establish) that the arbitration agreements he assented to are void, inoperative or incapable of being performed, the Court should compel arbitration.

## IV.  THE COURT SHOULD STAY THE ACTION PENDING ARBITRATION

"[T]he court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Under this provision, a "federal case must be stayed while the parties proceed to arbitration." *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 955 (9th Cir. 2012), *reversed and remanded on other grounds*, 718 F.3d 1052 (9th Cir. 2013); *see also Smith v. Spizzirri*, 601 U.S. 472, 474 (2024) ("The question here is whether §3 permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay

---

[9] Plaintiff also does not allege fraudulent inducement of the Sale Agreement or Loan Agreement, which independently require arbitration and encompass the claims. Thus, for multiple reasons, Plaintiff cannot evade arbitration under a fraudulent inducement theory.

1   pending arbitration. It does not."). This rule exists because it "would waste judicial
2   resources" if the court "permit[ted] discovery," took evidence and "determine[d] the merits
3   of the case at the same time as the arbitrator is going through a substantially parallel
4   process." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

5       The FAA's mandatory stay provision at 9 U.S.C. § 3 applies to cases under the
6   Convention. *See* 9 U.S.C. § 208 ("Chapter 1 [9 USCS §§ 1 et seq.] applies to actions and
7   proceedings brought under this chapter [9 USCS §§ 201 et seq.] to the extent that chapter
8   is not in conflict with this chapter [9 USCS §§ 201 et seq.] or the Convention as ratified by
9   the United States."); *Chloe Z Fishing Co.*, 109 F. Supp. 2d at 1261 (finding a stay under
10  FAA Chapter 1 applicable to Chapter 2 cases); *Mullen Techs., Inc.* 2020 U.S. Dist. LEXIS
11  116323, at *10 (staying action pending arbitration).

12      Once the Court finds that Plaintiff's claims must be arbitrated, Defendants request
13  that the Court stay this action pending completion of arbitration. All of Plaintiff's claims
14  are arbitrable. (Section III(C), *supra*.) But even if the Court determines that some claims
15  are arbitrable while some are not, the entire action should be stayed pending arbitration. All
16  the claims arise out of the same factual nexus and are closely connected. Thus, staying the
17  action would avoid duplication of resources and inconsistent findings between the
18  overlapping claims. *See Gsc Dev. v. Jinlong Indus. Co.*, 2017 U.S. Dist. LEXIS 235508, at
19  *7-8 (C.D. Cal. Dec. 4, 2017) ("Since all of the claims in the FAC are so closely connected,
20  proceeding with litigation will prejudice the arbitration and waste judicial resources.
21  Without a stay of all claims, the arbitration and litigation will adjudicate many of the same
22  questions of law and fact."); *Caroline Cho v. Casnak LLC*, 2022 U.S. Dist. LEXIS 207138,
23  at *23 (C.D. Cal. Sep. 7, 2022) ("A stay is mandatory as to at least some, if not all, of
24  Plaintiff's claims. Accordingly, the Court orders a stay of the instant proceedings."); *Wolf*
25  *v. Langemeier*, 2010 U.S. Dist. LEXIS 87017, at *23 (E.D. Cal. Aug. 24, 2010) ("In light
26  of the similarity of the issues of law and fact among each Plaintiff's claim and the possibility
27  of inconsistent rulings if the entire action is not stayed, the interests of economy and
28  efficiency favor staying this entire action.").

## V.    <u>CONCLUSION</u>

Plaintiff's claims are closely intertwined with the Mullis/OEP Agreements, which contain broad arbitration provisions covering the claims. The Mullis/OEP Agreements are subject to the New York Convention, and Defendants are entitled to compel arbitration under the equitable estoppel doctrine. The Court should compel arbitration pursuant to the Agreements Plaintiff signed and stay this action pending completion of arbitration. 9 U.S.C. §§ 206, 208.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>Dated: December 19, 2024</td><td>GREENBERG TRAURIG, LLP</td></tr>
<tr><td></td><td>By: <em>/s/ Michael E. McCarthy</em></td></tr>
<tr><td></td><td>Michael E. McCarthy<br>Layal L. Bishara<br><em>Attorneys for Defendants</em><br><em>JPMORGAN CHASE & CO. and RICK</em><br><em>SMITH</em></td></tr>
<tr><td>Dated: December 19, 2024</td><td>FOLEY HOAG LLP</td></tr>
<tr><td></td><td>GLASER WEIL FINK HOWARD JORDAN &<br>SHAPIRO LLP</td></tr>
<tr><td></td><td>By: <em>/s/ Robert Haney, Jr.</em></td></tr>
<tr><td></td><td>Robert Haney, Jr. (Admitted <em>Pro Hac Vice</em>,<br>NY Bar No. 221450)<br>FOLEY HOAG LLP<br>1301 Avenue of the Americas<br>New York, NY 10019<br>Tel: (212) 812-0399<br>rhaney@foleyhoag.com</td></tr>
<tr><td></td><td>Leah Rizkallah (Admitted <em>Pro Hac Vice</em>,<br>MA Bar No. 696949)<br>FOLEY HOAG LLP<br>155 Seaport Boulevard<br>Boston, MA 02210<br>Tel: (617) 832-1000<br>lrizkallah@foleyhoag.com</td></tr>
</table>

24-cv-01334

1

2          Emil Petrossian
           Alexander R. Miller
3          GLASER WEIL FINK HOWARD JORDAN
           & SHAPIRO LLP
4          600 West Broadway, Suite 2150
5          San Diego, CA 92101
           Tel: (619) 765-4380
6          EPetrossian@glaserweil.com
7          AMiller@glaserweil.com
           *Attorneys for Defendants*
8          *NEOLOGY, INC. and*
9          *FRANCISCO MARTINEZ DE VELASCO*

10

11    Dated: December 19, 2024          GOODWIN PROCTER LLP

12                                      By: */s/ Laura A. Stoll*
13                                          Laura A. Stoll
                                            Ariel E. Rogers
14                                          601 South Figueroa Street
15                                          Los Angeles, CA 90017
                                            Tel: (213) 426-2625
16                                          Fax: (213) 289-7725
17                                          LStoll@goodwinlaw.com
                                            ARogers@goodwinlaw.com
18                                          *Attorneys for Defendant*
19                                          *AVERY DENNISON CORPORATION*

20

21

22

23

24

25

26

27

28

19

I, Michael E. McCarthy, certify that the content of DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF is acceptable to all parties signing this motion, as required by the United States District Court for the Southern District of California Electronic Case Filing Administrative Policies and Procedures.

Dated: December 19, 2024          GREENBERG TRAURIG, LLP

By: */s/ Michael E. McCarthy*
          Michael E. McCarthy
          *Attorneys for Defendants*
          *JPMORGAN CHASE & CO. and RICK*
          *SMITH*