JOHN E. LORD [SBN 216111]
jlord@skiermontderby.com
PAUL B. DERBY [SBN 211352]
pderby@skiermontderby.com
MANE SARDARYAN [SBN 287201]
msardaryan@skiermontderby.com
**SKIERMONT DERBY LLP**
633 West Fifth Street, Suite 5800
Los Angeles, California 90071
Telephone:   (213) 788-4500
Facsimile:   (213) 788-4545

KEVIN P. POTERE (admitted *Pro Hac Vice*)
kpotere@skiermontderby.com
**SKIERMONT DERBY LLP**
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Telephone:   (214) 978-6600
Facsimile:   (214) 978-6601

*Attorneys for Plaintiff*
JOSEPH N. MULLIS

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS, an individual, <br><br> Plaintiff, <br><br> v. <br><br> J.P. MORGAN CHASE & CO., a Delaware corporation; RICK SMITH, an individual; NEOLOGY INC., a Delaware corporation; FRANCISCO MARTINEZ DE VELASCO, an individual; AVERY DENNISON CORP., a Delaware corporation, and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 3:24-cv-01334-JES-MSB <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** <br><br> Hearing Date: April 23, 2025 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 4B <br><br> Judge: Hon. James E. Simmons, Jr. |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................ 2

III.    LEGAL STANDARD ........................................................................................ 5

IV.    ARGUMENT AND AUTHORITIES ............................................................. 7

  A.    The Arbitration Provisions are the Result of Duress. ....................... 7

    1.    Wrongful Act ........................................................................................ 7

    a.    No Reasonable Alternative ............................................................. 8

  B.    The Arbitration Provisions are the Result of Fraud. ........................ 9

  C.    The Arbitration Provisions are Unconscionable. ............................. 10

  D.    Procedural Unconscionability ............................................................. 11

    1.    Oppression ........................................................................................... 12

    2.    Surprise ................................................................................................ 13

    3.    Substantive Unconscionability ......................................................... 14

  E.    Defendants are Non-signatories and Equitable Estoppel does not Apply. ....... 15

V.    CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*A&M Produce Co. v. FMC Corp.*,
  135 Cal. App. 3d 473 (1982) ...................................................................13

*Ali v. Daylight Transport, LLC*,
  59 Cal. App. 5th 462 (2020) ....................................................................12

*Al–Safin v. Circuit City Stores, Inc.*,
  394 F.3d 1254 (9th Cir. 2005) ...................................................................6

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ..................................................................................5

*Antonelli v. Finish Line, Inc.*,
  No. 5:11-CV-03874 (EJD), 2012 WL 525538 (N.D. Cal. Feb. 16, 2012) ...............11

*Armendariz v. Foundation Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ...............................................................................11

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
  785 F.3d 1320 (9th Cir. 2015) ...................................................................5

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................................................5

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ....................................................9

*Bolter v. Super. Ct.*,
  87 Cal. App. 4th 900 (2001) ...................................................................14

*Bridas S.A.P.I.C. v. Gov''t of Turkmenistan*,
  345 F.3d 347 (5th Cir. 2003) ...................................................................15

*Changzhou AMEC E. Tools & Equip. Co., Ltd. v. E. Tools & Equip., Inc.*,
  No. EDCV 11-00354 V, 2012 WL 3106620 (C.D. Cal. July 30, 2012) ..................6

*Chavarria v. Ralphs Grocery Co.*,
  733 F.3d 916 (9th Cir. 2013) .............................................................11, 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...................................................................5

*Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*,
  109 F. Supp. 2d 1236 (S.D. Cal. 2000) .....................................................7

*CrossTalk Prods., Inc. v. Jacobson*,
  76 Cal. Rptr. 2d 615 (1998) ......................................................................7

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ...................................................................9

*Davis v. O'Melveny & Myers*,
  485 F.3d 1066 (9th Cir. 2007) ............................................................10, 11

*Di Ferdinando v. Intrexon Corp.*,
  No. 16-CV-1826 W (JMA), 2017 WL 3641879 (S.D. Cal. Aug. 24, 2017) ...............8

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996) ...............................................................................6, 9

*Goldstein v. Gen. Motors LLC*,
  517 F. Supp. 3d 1076 (S.D. Cal. 2021) .....................................................9

*Gonzalez v. Comenity Bank*,
No. 1:19-CV-00348-AWI-EPG, 2019 WL 5596800 (E.D. Cal. Oct. 30, 2019) .........6

*Graham v. Scissor-Tail, Inc.*,
28 Cal. 3d 807 (1990) ....................................................................................... 13

*Harper v. Ultimo*,
113 Cal. App. 4th 1402 (2003) ......................................................................... 13

*Higgins v. Superior Ct.*,
140 Cal. App. 4th 1238 (2006) ......................................................................... 13

*Indian Hills Holdings, LLC v. Frye*,
No. 3:20-CV-00461-BEN-AHG, 2021 WL 5994036 (S.D. Cal. Dec. 17, 2021) .......6

*Javier v. Carnival Corp.*,
No. 09-CV-2003–LAB (WMc), 2010 WL 3633173 (S.D. Cal. Sept. 13, 2010) ......10

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ..............................................................................6

*Luxshare, LTD. v. ZF Auto. US, Inc.*,
547 F. Supp. 3d 682 (E.D. Mich. 2021) ........................................................9, 14

*Magno v. The Coll. Network, Inc.*,
1 Cal. App. 5th 277 (2016) ................................................................................ 14

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
No. 18-CV-05226-EMC, 2019 WL 13119015 (N.D. Cal. Mar. 11, 2019) .............7, 8

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
473 U.S. 614 (1985) .......................................................................................... 14

*Mousebelt Labs Pte. LTD v. Armstrong*,
674 F.Supp.3d 728 (N.D. Cal. 2023) ................................................................. 16

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) ........................................................................... 15

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .............................................................. 10, 13, 14

*Newbill v. CVS Caremark, LLC*,
683 F. Supp. 3d 1004 (D. Ariz. 2023) ..................................................................5

*Oto, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) ........................................................................................ 13

*Perdue v. Crocker Nat'l Bank*,
38 Cal.3d 913 (1985) ........................................................................................ 11

*Powell v. UHG I LLC*,
No. 23-CV-0086 DMS(KSC), 2023 WL 9503474 (S.D. Cal. Dec. 29, 2023) ...........5

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) ............................................................................. 15

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
157 Cal. App. 3d 1154 (1984) .............................................................................7

*Rodriguez v. Festival Fun Parks, LLC*,
No. 2:24-CV-1245 (NJC) (ARL), 2025 WL 307250 (E.D.N.Y. Jan. 27, 2025) .........6

*Rogers v. Royal Caribbean Cruise Line*,
547 F.3d 1148 (9th Cir. 2008) ........................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Salvador Flores Larios v. Township Building Servs. Inc.*,
   No. 24-CV-05838-TLT, 2025 WL 914354 (N.D. Cal. Mar. 17, 2025) .................... 13

*Serafin v. Balco Props. Ltd., LLC*,
   235 Cal. App. 4th 165 (2015) ............................................................................... 11

*Setty v. Shrinivas Sugandhalaya LLP*,
   3 F.4th 1166 (9th Cir. 2021) ................................................................................. 15

*The McCaffrey Group, Inc. v. Superior Court*,
   224 Cal. App. 4th 1330 (2014) ............................................................................. 12

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) .............................................................................. 12

*Velazquez v. Midland Funding, LLC*,
   No. 1:18-CV-00043-CWD, 2018 WL 6492602 (D. Idaho Dec. 10, 2018) ................ 5

*Wang v. Life Ins. Co. of the Southwest*,
   No. 19-cv-01150-YGR, 2019 WL 13201949 (N.D. Cal. Dec. 19, 2019) .................. 6

*Zaborowski v. MHN Gov't Servs., Inc.*,
   936 F. Supp. 2d 1145 (N.D. Cal. 2013) ................................................................ 13

*Zachman v.Hudson Valley Federal Credit Union*,
   49 F.4th 95 (2d Cir. 2022) ...................................................................................... 6

**Statutes**

9 U.S.C. § 2 ................................................................................................................. 5

9 U.S.C. § 4 ................................................................................................................. 6

## I.    <u>INTRODUCTION</u>

Defendants seek to enforce the draconian requirements of arbitration agreements that Plaintiff was coerced into signing. Yet these were not the first agreements regarding the Smartrac MEP. Rather, Plaintiff was promised the right to participate in the Smatrac MEP two years prior to the agreements in question. It was based on that promise back in 2012 that Mr. Mullis agreed to continue his employment at Neology. Importantly, the 2012 letter agreement did not contain any mention of the need to arbitrate in Germany. Two years later, Mr. Mullis finally received formal papers permitting him to participate in the Smartrac MEP but this time, the papers did contain arbitration agreements, although some were hidden under "miscellaneous" sections of the agreements. Mr. Mullis and other Neology employees were not given an opportunity to negotiate the terms of the agreements, which were prefabricated form agreements. Their choices were simple: either sign the papers as drafted or refuse to do so and receive nothing. Thus, Mr. Mullis really was not presented with any choice at all. Under duress, he signed the papers gaining the right to participate in the Smartrac MEP and then later signed papers giving that right away.

As set forth below, the arbitration agreements are unenforceable and Defendants' motion to compel should be denied for at least three reasons. *First*, Mr. Mullis only signed the agreements containing arbitration provisions out of economic duress as he was given a take it or leave it proposition in a position of unequal bargaining power. *Second*, the provisions were a result of fraudulent omission as the 2012 letter purposely made no mention of arbitration thus tricking Mr. Mullis into signing away his valuable rights in exchange for a promise that the original signers of the 2012 letter never intended to fulfill. *Third*, the arbitration provisions are both procedurally and substantively unconscionable and should not be enforced. Fourth, equitable estoppel does not support the right of non-signatory Defendants to enforce the arbitration provisions.

## II.    **FACTUAL BACKGROUND**

Neology is headquartered in San Diego, California. *See* Plaintiff's First Amended Complaint ("FAC") (ECF. No. 9) ¶6. Plaintiff first began working for Defendant Neology, Inc. in 2003. *See* FAC ¶15; Declaration of Joseph N. Mullison in Opposition to Defendants' Motion to Compel Arbitration dated April 4, 2025 ("Mullis Decl.") ¶2.

In August 2010, J.P. Morgan—through its then private equity arm One Equity Partners ("OEP")—announced a voluntary takeover offer to shareholders of SMARTRAC N.V. ("Smartrac"). *See* Declaration of Kevin P. Potere in Support of Plaintiff's Motion to Remand dated August 28, 2024, ECF No. 10 ("Potere Decl."), Ex. 1. In December 2010, Smartrac announced the purchase of a majority ownership in Neology. *Id.* Ex. 2.

Following Smartrac's acquisition of Neology, Plaintiff was offered a stake in the Smartrac Management Equity Program (the "Smartrac MEP"). *See* FAC ¶¶20, 25; Mullis Decl., ¶¶4-8, Ex. 1. The purpose of the offer was to convince Mr. Mullis to remain with Neology after its acquisition by Smartrac. (Mullis Decl. ¶7). The June 2012 Offer did not contain an arbitration provision and there was no mention of Mr. Mullis needing to arbitrate any claims relating to the Smartrac MEP in Germany. *Id*. ¶8; Ex. 1.

In the summer of 2014, Smartrac made a formal offer for Mr. Mullis to join the Smartrac MEP. (Mullis Decl. ¶9). Mr. Mullis was not given the opportunity to negotiate the terms of the agreements to the Smartrac MEP. *Id*. Instead, he was presented with take it or leave it standardized forms. *Id*. He felt at the time that he did not have a choice in terms of signing the papers, he either executed them and hoped to take part in the Smartrac MEP or refused and got nothing. *Id*.

Under the terms of the Smartrac MEP, Plaintiff was "loaned" €50,000 to purchase his shares in the Smartrac MEP. *See* Declaration of Robert Harmzen in Support of Joint Motion to Compel Arbitration dated December 19, 2024, ECF No. 27 ("Harmzen Decl."), Ex. 2. The loan agreement, which is not at issue in this litigation, contained a stand-alone arbitration agreement. *Id*. Ex. 2 at 18; Mullis Decl. ¶10. The sales agreement,

which is at issue in this litigation, did not contain a stand-alone arbitration provision. *Id*. Harmzen Decl. Ex. 1; Mullis Decl. ¶11. Instead, an arbitration provision was buried in the "Miscellaneous" section of the Agreement. *Id*. Ex. 1 at 7. Mullis Decl. ¶11.

In September 2017, OEP purchased Neology from Smartrac. (Potere Decl. Ex. 4). On September 19, 2017, Philipp von Meurers informed Mr. Mullis by email that his investment in the Smartrac MEP had a value of $0: "Following your exit from the Smartrac MEP we wanted to inform you of the exit calculation of your €50,000 investment. Pursuant to the signed agreement, Smartrac's LTM (latest twelve months) adjusted EBITDA is multiplied by the factor of 8x to arrive at Enterprise Value (EV). As you can see in the attachment, LTM Jun-17A PF adjusted EBITDA was €174k which yields an EV of €1.4mm. Adding net cash of €54.6mm gives a Total Equity Value of €55.9mm. However, since Preferred Equity has accrued up to €97.7mm as per 30/6/2017, the value of Common Equity is negative at (€41.8mm) and hence the MEP vehicle at (€3.3mm). Therefore, you will be paid back the original cost of your investment less any applicable loan to the extent taken out by you to finance the investment." *See* FAC (ECF. No. 9) ¶32, Ex. 1; Mullis Decl. ¶12, Ex. 1.

Defendant Francisco Martinez de Velasco, CEO of Neology, was copied on the email and, upon information and belief, took part in the calculations leading to the claim that Mr. Mullis's investment in Smartrac MEP had a value of $0. *Id*.

Plaintiff sought additional information from Mr. Meurers and then Christian Uhl—CEO of Smartrac, who was copied on the email, to determine how it was possible that my shares in the Smartrac MEP had no value. (Mullis Decl. ¶ 14). Specifically, he wanted to confirm the value of the sale of Neology and whether that value had been included in the fair market value determination for the Smartrac MEP. *Id*. He also wanted to confirm what value had been ascribed to Neology. *Id*.

On September 20, 2017, Mr. Uhl stated that Mr. Mullis was not entitled to any money under the Smartrac MEP: "First of all, the deals are not comparable and I will not start doing so. Secondly, and I believe that Jörg has made this very transparent to

you guys, SMARTRAC has significantly contributed to your new MEP as per an agreement between OEP and SMT. I thus believe that indeed I have paid a significant amount to you guys via this instrument. With respect to your further comments – you are exiting the company via a sale of the company. In doing so you are also exiting the MEP of SMARTRAC as a good leaver and you are treated as such. Based on the documentation you have received at the time you have been included in the program the rules for exiting the program and the underlying calculation method are crystal clear – we (OEP and SMT) have simply followed these rules. I can understand that you are not happy with the result of such calculation but the result is the result. Given the fact that I have contributed to you guys personally in other ways (MEP contribution) I sincerely believe that you should not feel mistreated." (Mullis Decl. ¶15; Ex. 2).

The implication of Mr. Meurers statement in the email was that money had indeed been paid on the Smartrac MEP via transfer to a separate MEP offered directly with Neology (the "Neology MEP") and that Mr. Mullis had better play ball and stop asking questions, or Mr. Mullis would lose out on benefits related to the Neology MEP. (Mullis Decl. ¶16). Eventually, Mr. Mullis was coerced into signing a release of his interest in the Smartrac MEP. *See* FAC (ECF. No. 9) ¶¶34-38, Ex. 1; Mullis Decl. ¶16. The release also contained an arbitration agreement that was buried in the "Miscellaneous" section of the agreement. (Harmzen Decl. Ex. 3 at 22).

In March 2020, Defendant Avery Dennison Corporation ("Avery") purchased Smartrac. (Potere Decl. Ex. 5). In September 2022, Plaintiff was terminated from his position at Neology after inquiring about the status of his interest in a separate Management Equity Program offered directly with Neology (the "Neology MEP"). *See* FAC (ECF. No. 9) ¶40; Mullis Decl. ¶17. A short time later, Mr. Mullis was informed that his interest in the Neology MEP had zero value. (FAC ¶42; Mullis Decl. ¶18). It was then that Mr. Mullis realized for the first time that the same pattern of fraudulent behavior by which he was denied compensation for his interest in the Neology MEP also

occurred earlier when he was denied any compensation for his interest in the Smartrac MEP. *Id.*

## III.  **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

In deciding a motion to compel arbitration, the FAA limits the court's power to determining "(1) whether a valid agreement to arbitrate exists and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "The party seeking to compel arbitration has the burden of proving each requirement." *Powell v. UHG I LLC*, No. 23-CV-0086 DMS(KSC), 2023 WL 9503474, at *2 (S.D. Cal. Dec. 29, 2023) (quoting *Velazquez v. Midland Funding, LLC*, No. 1:18-CV-00043-CWD, 2018 WL 6492602, at *9 (D. Idaho Dec. 10, 2018) (citing *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015))).

When deciding a motion to compel arbitration pursuant to the FAA, "[i]n cases like this, where the parties have submitted evidence outside the pleadings, including declarations and exhibits, the moving party's burden is governed by the standard for summary judgment. i.e., the moving party must show there is no genuine issue of material fact and that it is entitled to an order compelling arbitration as a matter of law." *Powell*, 2023 WL 9503474, at *2 (citing *Newbill v. CVS Caremark, LLC*, 683 F. Supp. 3d 1004, 1008 (D. Ariz. 2023) (considering motion to compel arbitration under summary judgment standard where both parties submitted matters outside the pleadings, including

declarations and exhibits)); s*ee also Gonzalez v. Comenity Bank*, No. 1:19-CV-00348-AWI-EPG, 2019 WL 5596800, at *4 (E.D. Cal. Oct. 30, 2019) ("On a motion to compel arbitration under the FAA, courts apply a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure."); *Wang v. Life Ins. Co. of the Southwest*, No. 19-cv-01150-YGR, 2019 WL 13201949, at *3 (N.D. Cal. Dec. 19, 2019) (same).

To determine whether a valid agreement exists, district courts apply applicable state law principles of contract formation. *Changzhou AMEC E. Tools & Equip. Co., Ltd. v. E. Tools & Equip., Inc.*, No. EDCV 11-00354 V, 2012 WL 3106620, at *11 (C.D. Cal. July 30, 2012), *aff'd sub nom. Xuchu Dai v. E. Tools & Equip., Inc.*, 571 Fed. Appx. 609 (9th Cir. 2014) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C. § 2]"); *Al–Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1257 (9th Cir. 2005)); *see also Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc.*, 517 U.S. at 687; *Indian Hills Holdings, LLC v. Frye*, No. 3:20-CV-00461-BEN-AHG, 2021 WL 5994036, at *6 (S.D. Cal. Dec. 17, 2021) ("the FAA's 'savings clause' allows a party to challenge an otherwise valid arbitration agreement based on any state law contract defenses, such as fraud, mistake, duress, or unconscionability.").

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Where "there is an issue of fact as to the making of the agreement for arbitration … then a trial is necessary." *Rodriguez v. Festival Fun Parks, LLC*, No. 2:24-CV-1245 (NJC) (ARL), 2025 WL 307250, at *6 (E.D.N.Y. Jan. 27, 2025) (citing *Zachman v.Hudson Valley Federal Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022); 9 U.S.C. § 4).

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Arbitration Provisions are the Result of Duress.

Courts have generally recognized the "well-established precedent [ ] that a meritorious defense of duress would undermine the enforcement of the arbitration agreement under Article II(3) of the Convention." *Changzhou AMEC E. Tools & Equip. Co.*, Ltd., 2012 WL 3106620, at *11. If an agreement is "null and void" under Article II(3), the underlying agreement to arbitrate is unenforceable and the Court cannot compel arbitration. *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1258–59 (S.D. Cal. 2000).

Under California law, economic duress is "a basis for vitiating a coerced party's consent to an agreement." *Changzhou AMEC E. Tools & Equip. Co., Ltd.*, 2012 WL 3106620, at *15 (citing *CrossTalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 76 Cal. Rptr. 2d 615 (1998)). This doctrine applies "when one party has done a wrongful act which is sufficiently coercive to cause a reasonably prudent person, faced with no reasonable alternative, to agree to an unfavorable contract." *Id.* (citing *CrossTalk Productions, Inc.*, 65 Cal. App. 4th at 644, 76 Cal. Rptr. 2d 615). To determine if a party had a reasonable alternative depends on whether "a reasonably prudent person would follow the alternative course, or whether a reasonably prudent person might submit." *Id.*

### 1.    Wrongful Act

"The 'wrongful act' element 'need not be in the nature of a tort or crime.'" *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-CV-05226-EMC, 2019 WL 13119015, at *5 (N.D. Cal. Mar. 11, 2019) (citing *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158 (1984)). Here, the 2012 Letter promised Mr. Mullis the right to participate in the Smartrac MEP. (Mullis Decl. Ex. 1). The promise in turn was used to make certain Mr. Mullis stayed with the company given his importance to the inner workings of Novartis. *Id.* ("In the name of the Shareholders I would also like to take the opportunity to sincerely thank you for all the work and efforts you have and will contribute to the success of Neology."); Mullis Decl. ¶7. Yet the 2012 Letter did not

contain an arbitration agreement. (Mullis Decl. ¶8; Ex. 1). Several years later, Mr. Mullis was presented with the opportunity to participate in the Smartrac MEP but only if he agreed to receive a loan and then purchase interest in the Smartrac MEP. *Id*. ¶9-11. Those agreements in turn contained arbitration provisions, though in different formats. Mr. Mullis was not given a choice. *Id*. If Mr. Mullis hoped to receive any benefits from participating in the Smartrac MEP that he was promised, he had to sign the agreements regarding the Smartrac MEP, including the agreements to arbitrate. Id. ¶9. Similarly, Mr. Mullis signed the agreement releasing his rights to the Smartrac MEP based on threats to his future employment. *Id*. ¶16.

### a. <u>No Reasonable Alternative</u>

As to the second element, economic duress cannot be established "[i]f a reasonable alternative was available, and there hence was no compelling necessity to submit to the coercive demands." *Martinez-Gonzalez*, 2019 WL 13119015, at *6. Here, Plaintiff did not have a reasonable alternative to signing the forms related to the Smartrac MEP. (Mullis Decl. ¶9). He was given the option of participating in the Smartrac MEP, which had previously been promised to him as a basis for keeping him as an employee, only if he signed the boilerplate forms related to the Smartrac MEP, including the arbitration provisions. *Id*.; *see Di Ferdinando v. Intrexon Corp.*, No. 16-CV-1826 W (JMA), 2017 WL 3641879, at *4 (S.D. Cal. Aug. 24, 2017) (finding sufficiently contested facts to deny motion to compel arbitration where the employee "had no choice but to sign [the agreement] in order to maintain her employment and support her family" and would not have been able to claim any of her stock options had she quit instead of signing).

Therefore, the arbitration provisions are unenforceable due to economic duress and, at the very least, the evidence creates a question of fact necessitating a trial under 9 U.S.C. § 4.

### B.    The Arbitration Provisions are the Result of Fraud.

Courts have recognized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C. § 2]." *Doctor's Assocs., Inc.* 517 U.S. at 687. "The elements of a cause of action for fraud in California are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge or falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). Since fraudulent omission alleges "a failure to act instead of an affirmative act," various district courts in the Ninth Circuit have found that fraudulent omission claims "can succeed without the same level of specificity required by a normal fraud claim." *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1086 (S.D. Cal. 2021) (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (internal quotations omitted)).

Here, through the 2012 letter, Mr. Mullis was promised the ability to participate in the Smartrac MEP in order to secure his continued employment. However, the 2012 letter never made any mention of Mr. Mullis needing to sign away his right to access the court system in the United States as part of his Smartrac MEP participation. Yet when Mr. Mullis was actually presented with the agreements related to the Smartrac MEP two years later, he was told that he would need to first take out a loan to cover the cost of participating in the Smartrac MEP. That loan agreement had a stand-alone arbitration provision. Mr. Mullis was also asked to sign a sales agreement purchasing shares in the Smartrac MEP. Hidden in the "Miscellaneous" section of that agreement, was another arbitration provision. The purpose of forcing Mr. Mullis and similar MEP members to arbitrate in Germany is clear: under German arbitration procedures, Plaintiffs are entitled to very limited discovery. *See Luxshare, LTD. v. ZF Auto. US, Inc.*, 547 F. Supp. 3d 682, 689–90 (E.D. Mich. 2021) (German counsel filed an affidavit stating that there is no procedural device to compel discovery from individuals in the United). Thus, the

omission of the Arbitration Provision in the 2012 letter was intended to trick Mr. Mullis into giving away valuable rights knowing that he would never actually be able to seek the benefits of the bargain because the later agreement contained German arbitration provisions. Tellingly, Defendants fail to allege that any of the employee members ever took on the burden of attempting to arbitration their rights in Germany nor would they given the considerable procedural hurdles and lack to access to robust discovery. Mr. Mullis was justified on relying on the representations made in the 2012 Letter because the letter was co-signed by Francisco Martinez de Velasco, the CEO of Neology, and Christian Uhl, the CEO of Smartrac. (Mullis Decl. ¶12). Mr. Mullis was damaged as a result of the fraudulent omissions because he was induced to not seek employment elsewhere at the time he received the 2012 Letter and he ultimately did not receive any value for his ownership interest in the Smartrac MEP. *Id*. ¶¶7, 18

Therefore, the arbitration provisions are unenforceable due to fraudulent omission and, at the very least, the evidence creates a question of fact necessitating a trial under 9 U.S.C. § 4.

### C.    The Arbitration Provisions are Unconscionable.

Courts have applied the state law defense of unconscionability in determining the issue of the validity of arbitration provisions under the FAA. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (applying unconscionability to arbitration provisions under the FAA and finding such provisions to be unconscionable); *Javier v. Carnival Corp.*, No. 09-CV-2003–LAB (WMc), 2010 WL 3633173, at *3–4, 10–12 (S.D. Cal. Sept. 13, 2010) (applying domestic law to rule on fraud and unconscionability defenses in determining validity of underlying agreement under Article II(3)) (citing *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)); *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008) (assessing whether unconscionability could render an agreement null and void under the Convention).

For a court to exercise its discretion not to enforce a contract clause under the doctrine of unconscionability, "procedural and substantive unconscionability must both be present," but "they need not be present in the same degree." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal alterations omitted) (emphasis in original). For this reason, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' *Antonelli v. Finish Line, Inc.*, No. 5:11-CV-03874 (EJD), 2012 WL 525538, at *3 (N.D. Cal. Feb. 16, 2012) (citing Davis, 485 F.3d at 1072). Furthermore, "a claim of unconscionability often cannot be determined merely by examining the face of the contract, but will require inquiry into its setting, purpose, and effect." *Id.* (citing *Perdue v. Crocker Nat'l Bank*, 38 Cal.3d 913, 926, 216 Cal. Rptr. 345, 702 P.2d 503 (1985)).

### D.    Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Id.*; *see also Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015) (the oppression element "arises from an inequality of bargaining power," while the surprise element "involves the extent to which the terms of the bargain are hidden."). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922; **see** also *Serafin*, 235 Cal. App. 4th at 177 (the surprise element "involves the extent to which the terms of the bargain are hidden.").

### 1. __Oppression__

"Oppression" generally entails a contract of adhesion. *The McCaffrey Group, Inc. v. Superior Court*, 224 Cal. App. 4th 1330, 1348 (2014). Adhesion contracts are standardized, preprinted forms that are offered by the party with superior bargaining power on a "take-it-or-leave-it basis" and are often indicative of procedural unconscionability. *Ali v. Daylight Transport, LLC*, 59 Cal. App. 5th 462, 474 (2020). In *Ali*, the court found an imbalance in bargaining power between the plaintiffs, who were independent-contractor truck drivers, and the defendant, who was the employer corporation. *Id*. This imbalance, coupled with the fact that the arbitration agreement was a standardized, preprinted, nonnegotiable form was sufficient to "demonstrate significant oppression." *Id*. (citation omitted); *see also Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.").

Here, Mr. Mullis was promised the right to participate in the Smartrac MEP back in 2012 to secure his continued employment at Neology following its acquisition by Smartrac. (Mullis Decl. ¶7, Ex. 1). It was not until 2014 that Mr. Mullis was presented with the formal papers regarding the Smartrac MEP, which were offered to him on a take-it-or-leave-basis. *Id*. ¶9; *see Chavarria*, 733 F.3d at 923 (holding district court did not err by finding arbitration agreement procedurally unconscionable where "Ralphs did not provide Chavarria the terms of the arbitration policy until her employment orientation, three weeks after the policy came into effect regarding any dispute related to her employment. The employment application merely contains a one-paragraph "notice" of the policy."). Mr. Mullis was afforded no opportunity to negotiate the terms of the Smartrac MEP, which were presented as a standardized, preprinted forms offered to all Smatrac MEP participants. (Mullis Decl. ¶ 9; Harmzen Decl., Exs. 1-2). The clear purpose of the German arbitration clause was to prevent Mr. Mullis from adjudicating

his claims when he was inevitably told that his share in the Smartrac MEP had no value. As a result, the arbitration agreements were "procedurally unconscionable contract[s] of adhesion because the agreement[s] w[ere] presented to [Mr. Mullis] on a take-it-or-leave-it basis." *Salvador Flores Larios v. Township Building Servs. Inc*., No. 24-CV-05838-TLT, 2025 WL 914354, at *5 (N.D. Cal. Mar. 17, 2025) (denying motion compel arbitration based on unconscionability).

### 2. Surprise

Surprise is "a function of the disappointed reasonable expectations of the weaker party." *Higgins v. Superior Ct.*, 140 Cal. App. 4th 1238, 1252 (2006) (citing *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003)); *see Oto, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (holding that a provision that is beyond the reasonable expectations of the weaker party, generates surprise). Showing surprise involves the extent to which the disputed terms are hidden in a prolix printed form that was drafted by the party seeking to enforce the disputed terms. *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982). Under California law, there is no need to demonstrate "surprise" if the arbitration provision of an adhesive contract is oppressive. *See Nagrampa [ ]*, 469 F.3d at 1284 (collecting cases).

Here, the Loan Agreement, which is not the subject of this litigation, contains a separate, stand-alone arbitration agreement regarding proceeding with arbitration in Germany. (Harmzen Decl., Ex. 2 at 19). The Sales Agreement, which is the subject of this litigation, also contains an arbitration provision but that provision is hidden in the "Miscellaneous" section of the Sales Agreement without bold print and there is not separate, state-alone arbitration agreement. *Id*. Ex. 1 at 7. Yet both the Loan Agreement and Sales Agreement are form agreements that were created at the same time. There is no reason for the disparity between the agreements other than to conceal the arbitration provision in the Sales Agreement from the reader, in this case Mr. Mullis. *See Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1990); *see also Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013), *aff'd*, 601 F. App'x 461 (9th

Cir. 2014) (procedural unconscionability supported where the "arbitration clause appears in paragraph twenty of twenty-three paragraphs [and] … it does not require a separate signature").

Therefore, the arbitration clauses were clearly the result of surprise.

### 3.  **Substantive Unconscionability**

"The substantive element looks to the actual terms of the parties' agreement to ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 287-88 (2016) (internal quotation marks and alterations omitted). "[A] party may attempt to make a showing that would warrant setting aside the forum-selection clause-that the agreement was affected by fraud, undue influence, or overweening bargaining power; that enforcement would be unreasonable and unjust; or that proceedings in the contractual forum will be so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court." *Nagrampa*, 469 F.3d at 1287 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985)). "In order to assess the reasonableness of ... 'place and manner' restrictions, the respective circumstances of the parties become relevant." *Bolter v. Super. Ct.*, 87 Cal. App.4th 900, 910, 104 Cal. Rptr. 2d 888 (2001).

Here, the arbitration provisions seek to force Mr. Mullis, a California-based citizen of the United States, to arbitrate his claims in Germany under the Arbitration Rules of the German Institution of Arbitration e. V. ("DIS Rules"). The cost of travel for Mr. Mullis, his attorneys, and witnesses alone creates significant obstacles to arbitration. In addition, German arbitration does not provide for the ability of parties to compel the production of documents. *See Luxshare, LTD.*, 547 F. Supp. 3d at 689-90. Here, as set forth in the FAC, Mr. Mullis has never been given the alternative, so called "shadow" cap table for Neology. (FAC ¶¶ 43-48). Without that document, it will be very difficult for Mr. Mullis to establish any of his claims through arbitration. Mr. Mullis has

gone through extraordinary efforts to obtain the document, and relied on the misrepresentations of JP Morgan that it would produce the document, but all of Mr. Mullis' efforts have been rebuffed. *Id.* Forcing Mr. Mullis to arbitrate in Germany when he has no chance of obtaining the information concealed by Defendants would effectively be a death sentence for his claims. As such, German arbitration is the definition of substantive unconscionability in the instant matter.

Therefore, the arbitration provisions are unenforceable due to unconscionability and, at the very least, the evidence creates a question of fact necessitating a trial under 9 U.S.C. § 4.

### E. Defendants are Non-signatories and Equitable Estoppel does not Apply.

Defendants readily admit that none of them are signatories to the Arbitration Provisions they are attempting to invoke in order to avoid adjudication of Plaintiff's causes of actions. As such, Defendants only hope to rely on the arbitration provisions is to rely on the doctrine on equitable estoppel.

Equitable estoppel in the arbitration context has "very narrow confines." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). It only applies in "rare circumstances." *Bridas S.A.P.I.C. v. Gov''t of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1169 (9th Cir. 2021) (citing Mundi, 555 F.3d at 1045 (citation and internal quotation marks omitted)). "For equitable estoppel to apply, it is 'essential ... that the subject matter of the dispute [is] intertwined with the contract providing for arbitration.'" *Setty*, 3 F.4th at 1169 (citing *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013)). "We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff[.]" *Id*. The intertwinement standard is satisfied where the plaintiff's claims are predicated on rights that exist "only by virtue" of the contracts containing arbitration

provisions, and the harm allegedly suffered "cannot be divorced from" those rights. *Mousebelt Labs Pte. LTD v. Armstrong*, 674 F.Supp.3d 728, 741 (N.D. Cal. 2023).

Here, Mr. Mullis' claims are not predicated on rights that exist only by virtue of the agreements that contain the Arbitration Provisions. Rather, Mr. Mullis argues that his claims against Defendants arise from conduct occurring before the Arbitration Provisions were executed. Specifically, Mr. Mullis received a letter in 2012 promising him that he would be permitted to participate in the Smartrac MEP at a later date. (Mullis Decl. ¶¶4-6; Ex. 1). That letter did not contain any reference to the need to arbitrate any disagreements in Germany should Smartrac decide to rip Mr. Mullis off and deny him his rights to the Smartrac MEP based on falsified capitalization tables. (Mullis Decl. Ex. 1). Damages resulting from the fraudulent 2012 Letter are not necessarily tied to the Smartrac MEP. Rather, Mr. Mullis can also establish damages resulting from continuing his employment with Neology rather than seeking other employment. (Mullis Decl. ¶ 7).

Therefore, Defendants have not shown that the arbitration provisions should be enforced under the doctrine of equitable estoppel and, at the very least, the evidence creates a question of fact necessitating a trial under 9 U.S.C. § 4.

## V.    **CONCLUSION**

Plaintiff therefore respectfully requests that the Court deny Defendants' Motion to Compel Arbitration.

Dated: April 9, 2025

/s/ Kevin P. Potere
KEVIN P. POTERE (admitted *Pro Hac Vice*)
kpotere@skiermontderby.com
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Telephone:  (214) 978-6600
Facsimile:  (214) 978-6601

JOHN E. LORD [SBN 216111]
jlord@skiermontderby.com
PAUL B. DERBY [SBN 211352]
pderby@skiermontderby.com
MANE SARDARYAN [SBN 287201]
msardaryan@skiermontderby.com
SKIERMONT DERBY LLP
633 West Fifth Street, Suite 5800
Los Angeles, California 90071
Telephone:  (213) 788-4500
Facsimile:  (213) 788-4545

*Attorneys for Plaintiff*
*JOSEPH N. MULLIS*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on April 9, 2025 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Pursuant to Local Rule 5.4(c), any other counsel of record will be served by electronic mail, facsimile, or overnight delivery.

/s/ *Kevin P. Potere*
Kevin P. Potere