UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSPEH N. MULLIS,<br><br>                              Plaintiff,<br><br>v.<br><br>J.P. MORGAN CHASE & CO., DOES 1 TO 2, NEOLOGY INC., FRANCISCO MARTINEZ DE VELASCO, AVERY DENNISON CORP., and RICK SMITH,<br><br>                              Defendants. | Case No.: 3:24-cv-01334-JES-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING JOINT MOTION TO COMPEL ARBITRATION AND STAY THE CASE;**<br><br>**(2) DENYING ALL MOTIONS TO DISMISS AS MOOT**<br><br>**[ECF Nos. 28, 29, 30, 32]** |

Plaintiff Joseph Mullis filed the instant lawsuit against Defendants J.P. Morgan & Chase Co. ("JPMC"), Neology Inc. ("Neology"), Francisco Martinez De Velasco ("Velasco"), Avery Dennison Corp. ("Avery"), and Rick Smith ("Smith") (collectively, "Defendants"). On December 19, 2024, Neology and Velasco filed a motion to dismiss the First Amended Complaint ("FAC"). ECF No. 29. The same day, Avery filed a motion to dismiss the FAC. ECF No. 30. All Defendants also filed an omnibus motion to dismiss the FAC. ECF No. 29. On December 20, 2024, Defendants then filed a joint motion to compel arbitration and stay the case. ECF No. 32. Oral argument on Defendants' motion to compel

arbitration was held on April 23, 2025. For the reasons stated herein, Defendants' motion to compel arbitration and stay the case is **GRANTED**. Each of the motions to dismiss are **DENIED** as **moot**.

## I.     BACKGROUND

Plaintiff began working at Neology in 2003. ECF No. 1-6, Ex. C-2, FAC ¶ 15. In August 2010, JPMC, through its then private equity arm One Equity Partners ("OEP"), acquired a majority interest in Smartrac. *Id.* ¶ 17. The year after, Smartrac acquired a majority interest in Neology. *Id.* ¶ 19.

Following Smartrac's purchase of Neology, Plaintiff, on June 12, 2012, received a letter from Phillip von Meurers ("Meurers"), Director of OEP, and Defendant Velasco of Neology, promising Plaintiff future ability to participate in the Smartrac Management Equity Program ("Smartrac MEP")[1]. ECF No. 40-1, ¶ 4; FAC ¶ 20. Plaintiff alleges that based on this letter, he decided to stay at Neology rather than seeking new employment following Smartrac's acquisition of Neology.[2] ECF No. 40, ¶ 7. In May 2014, Plaintiff was formally invited to participate in the Smartrac MEP. FAC ¶ 25.

To participate in Smartrac MEP, JPMC loaned Plaintiff €50,000, to be used by Smartrac as payment for Plaintiff's interest in the Smartrac MEP. *Id.* ¶ 26. Defendants allege that Smartrac MEP was actually OEP Technologie Beteteiligungs GbR ("OEP GbR"), a civil law partnership organized under the laws of Germany. ECF No. 32 at 12; ECF No. 32-1 ("Harmzen Decl.") ¶¶ 6-9. Moreover, Defendants allege that JPMC did not enter into any loan agreements with Plaintiff for his investment, and instead, Plaintiff's agreements were between himself, as borrower, and OEP Holding as lender. ECF No. 32 at 12. In 2014, OEP Holding and Plaintiff entered into a Sale and Transfer Agreement

---

[1] This letter is not explicit in Plaintiff's FAC and is supported by his declaration presented in his opposition to Defendants' Motion to Compel Arbitration. *See* ECF No. 40-1.

[2] This statement is not in Plaintiff's FAC and is supported by his declaration presented in his opposition to Defendants' Motion to Compel Arbitration. *See* ECF No. 40-1, ¶ 7.

("Sale Agreement"), by which OEP Holding sold, and Plaintiff purchased, a "Partial Partnership Interest" in OEP GbR for the total purchase price of €50,000 to fund the purchase. *Id.* Through a contemporaneous "Loan Agreement," OEP Holding, not JPMC, loaned Plaintiff the €50,000 to fund the purchase. *Id.*

In or about September 2017, Smartrac sold Neology. FAC ¶ 29. Plaintiff alleges that he was informed through email from Director Meurers that his "investment in the Smartrac MEP had a value of $0[.]" *Id.* ¶ 32. In 2018, Plaintiff then entered into a Sale and Transfer and Loan Termination Agreement ("Termination Agreement"), by which he sold his interest in OEP GbR back to OEP Holding, and OEP Holding terminated the unrepaid loan of €50,000 that Plaintiff used to buy his interest initially. Harmzen Decl. ¶ 10, Ex. 3. (The Sale Agreement, the Loan Agreement and the Termination Agreement are referred to collectively as the "Mullis/OEP Agreements.").

The 2014 Sale Agreement and 2018 Termination Agreement contain virtually identical arbitration provisions, stating:

> "All disputes arising out of or in connection with this Agreement, including its validity shall be finally settled in accordance with the Arbitration Rules of the German Institution of Arbitration e.V. (*DIS Rules*) without recourse to the ordinary courts of law. The place of arbitration shall be Frankfurt [am Main], Germany. The arbitral tribunal shall consist of three arbitrators. The language of the arbitral proceedings is English. Oral hearings may be conducted in another language if all parties participating in the hearing and the arbitrators agree so."

ECF No. 32-2 at 5, § 5.2, 22, § 5.3.

The Loan Agreement also includes a separate arbitration agreement, stating:

> "All disputes arising between the parties to the loan agreement in connection with the loan agreement or its validity shall be finally settled in accordance with the Arbitration Rules of the German Institution of Arbitration e.V. (*DIS Rules*) without recourse to the ordinary courts of law. The place of arbitration shall be Frankfurt am Main. The number of arbitrators is three. The language of the arbitral proceedings is English. Oral hearings may be conducted in another language if all parties participating in the hearing and the arbitrators agree so."

ECF No. 32-2 at 17, § 2.

Plaintiff alleges that Defendants transferred valuable intellectual property from Neology to Smartrac in order to devalue Neology at the time of sale. FAC ¶ 30. Moreover, Plaintiff alleges that Defendants conspired with Smartrac to defraud Plaintiff and prevent him from obtaining the true value of his interest in Smartrac MEP. *Id.* ¶ 158. Thus, Plaintiff alleges that he was coerced into releasing his investment in OEP GrB, for which he now seeks damages through this lawsuit. *Id.* ¶¶ 38, 59, 63, 156, 165.

In March 2020, Defendant Avery purchased Smartrac. *Id.* ¶ 39. In September 2022, Plaintiff was terminated from his position at Neology after inquiring about the status of his interest in a separate Management Equity Program offered directly with Neology ("the Neology MEP"). *Id.* ¶ 40. Shortly after, Plaintiff was informed that his interest in the Neology MEP had zero value. *Id.* ¶ 42. Plaintiff alleges that the same pattern of fraudulent behavior by which he was denied compensation for his interest in Neology MEP also occurred earlier when he was denied compensation for his interest in Smartrac MEP. *Id.*

## II.   LEGAL STANDARD

As a preliminary matter, federal substantive law governs the scope of an arbitration agreement and favors arbitration. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). State contract law, on the other hand, usually governs issues pertaining to the validity, revocability, and enforceability of an agreement to arbitrate. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716-17 (9th Cir. 2020).

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. The FAA provides that once a defendant files a motion to compel arbitration, a district court must "hear the parties,

| | |
|---|---|
| 1 | and upon being satisfied that the making of the agreement for arbitration or the failure to |
| 2 | comply therewith is not" at issue, must "make an order directing the parties to proceed to |
| 3 | arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "By its terms, the |
| 4 | Act leaves no place for the exercise of discretion by a district court, but instead mandates |
| 5 | that district courts shall direct the parties to proceed to arbitration on issues as to which an |
| 6 | arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, |
| 7 | 218 (1985) (emphasis in original); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 |
| 8 | (9th Cir. 1999). Thus, the court's role under the Act is limited to ascertaining "(1) whether |
| 9 | a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses |
| 10 | the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. |
| 11 |      Similar to the FAA, the United Nations Convention on the Recognition and |
| 12 | Enforcement of Foreign Arbitral Awards (the "Convention") governs arbitration |
| 13 | provisions in *international* commercial agreements. *See Chloe Z Fishing Co. v. Odyssey* |
| 14 | *Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000) (citing 9 U.S.C. § 201). |
| 15 | "The Convention must be enforced according to its terms pursuant to the enabling |
| 16 | legislation adopted by Congress—Chapter 2 of the Federal Arbitration Act ("FAA"), 9 |
| 17 | U.S.C. §§ 201-208, and any provisions of Chapter 1 of the FAA, 9 U.S.C. §§ 1 *et seq.*, |
| 18 | which do not conflict with the Convention, *see* 9 U.S.C. § 208." *Chloe Z Fishing*, 109 F. |
| 19 | Supp. 2d at 1241 (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 |
| 20 | F.2d 1140 (5th Cir. 1985)). |
| 21 |      "When a party in a suit subject to the Convention moves to compel arbitration under |
| 22 | 9 U.S.C. § 206, 'the substantive provisions of Chapter 2 of the FAA direct a court to |
| 23 | perform a two-step analysis before referring the dispute to arbitration.'" *Mullen Techs.,* |
| 24 | *Inc. v. Qiantu Motor (Suzhou) LTD.*, No. 3:19-cv-1979-W-AHG, 2020 WL 3573371, at *3 |
| 25 | (S.D. Cal. July 1, 2020) (quoting *Chloe Z Fishing Co., Inc.*, 109 F. Supp. 2d at 1241). The |
| 26 | Convention "provides two causes of action in federal court for a party seeking to enforce |
| 27 | arbitration agreements covered by the convention: (1) an action to compel arbitration ... |
| 28 | and (2) at a later stage, an action to confirm an arbitral award[.]" *Lindo v. NCL (Bahamas)*, |

*Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011) (internal citation omitted). When considering a motion to enforce an arbitration clause pursuant to an agreement covered by the Convention, a court "shall ... refer the parties to arbitration unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Id.* (citing Convention, art. II(3)); *see also Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir. 2005).

### III. DISCUSSION

Plaintiff, in his failure to address, and concession at oral argument, does not dispute that a valid agreement to arbitrate exists and that the agreement encompasses the dispute at issue. Plaintiff, furthermore, concedes that the Convention applies. Instead, Plaintiff challenges the enforceability of the arbitration agreements at issue and asserts the following contract defenses: (1) economic duress, (2) fraudulent omission, and (3) unconscionability. ECF No. 40 at 12-20. Plaintiff also argues that some of the Defendants, as nonsignatories, cannot enforce the arbitration agreements under the doctrine of equitable estoppel. *Id.* at 20-21. The Court addresses each argument in turn.

**A.    Contract Defenses**

**1.    Economic Duress**

Under California law, a contract is voidable if the agreement is made under duress. "Economic duress can excuse an innocent party's contractual obligations when the other contracting party does 'a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1119 (9th Cir. 2018) (*Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158 (1984)); *see also Itkoff v. ABC Phones of N. Carolina, Inc.,* No. 8:17-CV-02043-JLS-JDE, 2018 WL 6242158, at *6 (C.D. Cal. Oct. 11, 2018) (applying this standard in the context of an arbitration agreement between an employer and employee). Plaintiff bears the burden to prove duress by a preponderance of the evidence. *In re Marriage of Balcof*, 141 Cal. App. 4th 1509, 1522-23 (2006).

To force him to stay with the company, Plaintiff alleges he was given the 2012 Letter promising the right to participate in the Smartrac MEP. ECF No. 40 at 12. To receive benefits, Plaintiff alleges he had no choice but to agree to the arbitration provisions. *Id.* at 13. Similarly, as to the Termination Agreement, Plaintiff alleges that he released his rights to the Smartrac MEP based on threats to his future employment. *Id.*

The Court is unconvinced of Plaintiff's arguments. Plaintiff's duress allegations are not directed at the arbitration clauses within the Mullis/OEP Agreements, but at the contract as whole. *See Simula*, 175 F.3d at 726 ("economic duress of [the contract] as a whole, [such as the plaintiff] seems to be asserting in its complaint, [is a] question[] for the arbitrator"). Even so, Plaintiff's conclusory statements that he was forced to sign the Mullis/OEP Agreements to keep his job is insufficient to establish that his assent to the arbitration provisions should be excused. *See Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1129 (1999) ("the compulsory nature of a predispute arbitration agreement does not render the agreement unenforceable on grounds of coercion or for lack of voluntariness."). Plaintiff provides no evidence that his employment with Neology hinged on his investment in the Smartrac MEP. He provides no evidence that he needed to invest in the Smartrac MEP any more than he needed to invest in the stock market or some other investment vehicle. Nor has Plaintiff provided any evidence of a wrongful act that deprived him of his free will to decide whether to sign the three Mullis/OEP Agreements, which all included similar arbitration provisions. Thus, Plaintiff fails to satisfy his burden to show that his assent to the Mullis/OEP Agreement was made under duress.

### 2. Fraudulent Omission

Plaintiff argues that the arbitration provisions are unenforceable due to fraudulent omission. ECF No. 40 at 14-15. Plaintiff points to the omission of an arbitration provision in the June 2012 Letter, which he argues was "intended to trick [him] into giving away valuable rights knowing he would never actually be able to seek the benefits of." *Id.* at 15. As a result of this omission, he alleges that he was damaged because he was induced not

to seek employment elsewhere and ultimately did not receive any value for his ownership interest in the Smartrac MEP. *Id.*

California law distinguishes between fraud in the execution of a contract and fraud in the inducement of a contract. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996). Fraud in the execution of a contract occurs when "'the promisor is deceived as to the nature of his act, and actually does not know what he is signing, ... mutual assent is lacking, and [the contract] is *void.*'" *Id.* at 415 (quoting *Ford v. Shearson Lehman Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986) (emphasis in original)). If the consent to the arbitration clause was obtained by fraud, then the arbitration clause is unenforceable. *Rosenthal*, 14 Cal. 4th at 416-17. A defense of fraud in the execution of an arbitration agreement is to be decided by the court. *Id.* ("[C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law."). However, a defense of fraud in the inducement, when the party knows what he is signing but his consent is induced by fraud, is still arbitrable. *Id.* at 419.

Unlike a claim of actual fraud in tort, which requires a showing that the party making the misrepresentation acted with knowledge of falsity and intent to defraud, *see OCM Principal Opportunities Fund, L.P. v. CBIC World Mkts. Corp.*, 157 Cal. App. 4th 835, 845 (2007), the contract defense of fraud in the execution focuses exclusively on the mental state of the party receiving the misrepresentation and executing the agreement. *See Rosenthal*, 14 Cal. 4th at 420 ("'If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent *by one who neither knows nor has a reasonable opportunity to know* of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.'" (quoting Restatement (Second) of Contracts)); *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986) ("Fraud in the execution arises when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.").

Thus, to establish fraud in the execution, Plaintiff must show that: (1) Defendants made misrepresentations as to the nature or character of the writing; (2) Plaintiff reasonably relied on those misrepresentations; and (3) Plaintiff was thereby deprived of a "reasonable opportunity to know of the character or essential terms of the proposed contract." *See Rosenthal*, 14 Cal. 4th at 423 (internal quotation marks omitted).

Plaintiff has failed to make such a showing. In the Court's Order denying Plaintiff's motion to remand, it made clear that the June 2012 Letter "serves only as a precursor to the rights established by the Mullis/OEP Agreements, and by itself, provides no rights for Plaintiff to base his claims upon." *See* ECF No. 26 at 8. Once again, it is not reasonable for Plaintiff to rely on the absence of an arbitration provision in the June 2012 Letter when the Mullis/OEP Agreements *expressly include* arbitration provisions. *See L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, No. CV 11-4592-GW(AGRx), 2013 WL 12113998, at *17 (C.D. Cal. Sept. 6, 2013) ("A number of other decisions have similarly held that there cannot be justifiable reliance where a plaintiff claims to have relied upon a promise or representation which is wholly inconsistent with an express term of the contract knowingly executed by the plaintiff."); *BASF Corp. v. Platinum Collision Centers, Inc.*, No. EDCV 18-1614-MWF (KKx), 2019 WL 6317776, at *6 (C.D. Cal. July 3, 2019) ("where alleged misrepresentations in a fraud in the inducement action contradict an integrated written agreement, as here, California courts routinely conclude that reliance is simply not justifiable." (citations and internal quotations omitted)). Thus, because Plaintiff has failed to proffer evidence of fraud directed at the specific arbitration provisions within the Mullis/OEP Agreements, he cannot establish a defense to invalidate those provisions. Plaintiff's fraud claims as to the contracts as a whole are for the arbitrator to decide. *See Simula*, 175 F.3d at 726.

### 3. Unconscionability

In support of his argument that the arbitration clauses are unenforceable, Plaintiff relies on California contract law to argue that the clauses are unconscionable because they result from oppression or surprise. *See* ECF No. 40 at 15-20. However, under the

Convention, only "internationally recognized contract formation defenses" may be invoked to challenge an arbitration agreement as "null and void." *Chloe Z Fishing*, 109 F. Supp. 2d at 1259; *Oakberry SD UTC, LLC v. Oakberry Acai, Inc.*, No. 23cv1883-BEN (MSB), 2024 WL 3463651, at *5 (S.D. Cal. July 18, 2024) ("The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—can be applied neutrally before international tribunals." (citing *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015))). "Defenses that the arbitration agreement is unconscionable…are premature and not available at this setting." *Oakberry*, 2024 WL 3463651, at *5 (citations omitted). Thus, the Court cannot consider Plaintiff's unconscionability defense at this stage.

## B.   Equitable Estoppel

Plaintiff argues that Defendant, as nonsignatories, cannot enforce the arbitration provisions. ECF No. 40 at 20-21. Equitable estoppel generally allows a nonsignatory to enforce the arbitration clause of an agreement against a signatory bringing claims against it when the claims rely on terms of the agreement. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) (holding domestic doctrines including equitable estoppel may apply to international arbitration agreements under the Convention). Under federal common law, equitable estoppel requires that the subject matter of the dispute be "intertwined with the contract providing for arbitration." *Id.* at 1169 (cleaned up). This standard is satisfied where a signatory "raises allegations of collusive misconduct between the nonsignatory and other signatories." *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d. 728, 736-737 (N.D. Cal. 2023) (surveying federal common law of equitable estoppel).

Plaintiff alleges that his claims are not predicated on the rights that exist only by virtue of the Mullis/OEP Agreements, but instead arose from the June 2012 Letter. ECF No. 40 at 21. As discussed in the Court's previous Order:

> "Plaintiff's alleged damages are the monies he should have received for his interest in the Smartrac MEP. Plaintiff's interest was acquired through the

> Sale Agreement and Loan Agreement, and therefore the value of the interest is determined by the Sale Agreement and the incorporated OEP GbR partnership agreement. In turn, any determination of Plaintiff's rights or the value of his interest depends on the Mullis/OEP Agreements, and neither the validity of the claims nor Plaintiff's alleged damages can be determined without the Mullis/OEP Agreements. The June 12th letter, on the other hand, serves only as a precursor to the rights established by the Mullis/OEP Agreements, and, by itself, provides no rights for Plaintiff to base his claims upon."

ECF No. 26 at 8. Thus, because Plaintiff's claims and alleged injuries are intertwined with the Mullis/OEP Agreements, Defendants, even as nonsignatories, can enforce the arbitration provisions in those agreements.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Compel Arbitration, ECF No. 32, and **STAYS** this suit pending a decision in arbitration. The parties are further **ORDERED** to file a joint status report no later than five (5) days after arbitration is complete. The Court **DENIES** all Motions to Dismiss the FAC as moot.

**IT IS SO ORDERED**.

Dated:  May 29, 2025

Honorable James E. Simmons Jr.
United States District Judge